BRITISH TRANSPORT COMMISSION *v.* UNITED
STATES ET AL.

No. 247.   Argued April 29, 1957.—Decided June 10, 1957.

*Dean Acheson* argued the cause for petitioner.   With
him on the brief were *Edwin Longcope* and *Charles A.
Horsky.*

*Assistant Attorney General Doub* argued the cause for the United States, respondent. With him on the brief were *Solicitor General Rankin, Samuel D. Slade* and *William W. Ross.*

*Wilbur E. Dow, Jr.* argued the cause for Haslam et al., respondents. With him on the brief were *John W. Oast, Jr.* and *C. Lydon Harrell, Jr.*

MR. JUSTICE CLARK delivered the opinion of the Court.

The British Transport Commission, owner of the overnight ferry, *Duke of York,* questions the power of a District Court sitting in an admiralty limitation proceeding to permit the parties to cross-claim against each other for damages arising out of the same maritime collision. The United States, as owner of the U. S. N. S. *Haiti Victory,* had filed the original proceeding in which the Commission along with others filed claims. While the proceeding was pending some of the claimants against the *Haiti* filed cross-claims against the *Duke* and, in addition, the United States asserted a "set-off" and "cross-claim" against the *Duke* in answer to the latter's claim. The District Court dismissed all of the cross-claims on the ground that "a limitation proceeding does not provide a forum for the adjudication of liability of co-claimants to each other." The Court of Appeals reversed holding that "As a practical matter as well as an equitable one, the claimants herein should be allowed to implead the Commission." 230 F. 2d 139, 144. Because the question is an important one of admiralty jurisdiction we granted certiorari, limited to the limitation proceeding question. 352 U. S. 821. We agree with the Court of Appeals.

On May 6, 1953, in the North Sea, the Naval Transport, *Haiti Victory,* owned by the United States, rammed the overnight channel ferry, *Duke of York,* owned by

petitioner. The bow of the *Duke* broke away from the vessel and sank as a result of a deep cut on her port side just forward of the bridge inflicted by the *Haiti*. While the *Haiti* suffered only minor damage the *Duke's* loss was claimed to be $1,500,000. In addition several of the 437 persons aboard the *Duke* were killed, many were injured, and many of them lost their baggage. The *Haiti* returned to the United States and, thereafter, this proceeding was filed under §§ 183–186 of the Limited Liability Act, R. S. §§ 4281–4289, as amended, 46 U. S. C. §§ 181–196, for exoneration from, or limitation of, liability for loss or damage resulting from the collision. The United States as petitioner further alleged that the collision was "caused by the fault and neglect of the *SS Duke of York* and the persons in charge of her . . . and occurred without fault on the part of the petitioner . . . ."

The *Duke* filed a claim in the proceeding for $1,500,000 and in addition an answer in which it claimed, *inter alia,* that the damages resulting from the collision were "not caused or contributed to by any fault or negligence on the part of this claimant . . . but were done, occasioned or incurred with the privity or knowledge of and were caused by the Petitioner and its managing officers and supervising agents and the master of the *Haiti Victory* . . . which will be shown on the trial." The United States answered that the collision "was occasioned by either the sole fault of the *Duke of York* or the joint fault of both the *Duke of York* and the *Haiti Victory*"; it alleged damage to the *Haiti* in the sum of $65,000, and that in addition it "has also been subjected to claims by passengers and members of the crews of both vessels filed herein, which presently approximate $809,714 for personal injury and death, and $45,975 for property damage other than that claimed by the *Duke of York;* all of which damage it prays to set off and recoup against the claimant,

British Transport Commission, as owner of the *Duke of York* . . . ." Various of the claimants against the *Haiti* in the meanwhile filed impleading petitions against the *Duke* alleging the collision was "caused or contributed to by the fault and negligence of the *S. S. 'Duke of York'* . . ." setting out, as did the United States, the particular acts upon which the claim of negligence was based. The District Court dismissed all of these cross-claims holding that the Act offers "a forum for the complete adjudication and recovery of all claims . . . against the petitioner only. . . . To permit one claimant to prosecute another claimant in the limitation litigation would be unfair. The latter has intervened under compulsion, the court enjoining his resort to any other tribunal. Therefore, his responsibility should not be enlarged beyond that incident to his claim. Obedience to the injunction should not expose him to an attack to which, in regular course, he would be subject only in the jurisdiction of his residence or other place of voluntary entrance."

On a hearing "restricted to the issues of the asserted liabilities of the two vessels, *Duke of York* and *Haiti Victory,* for the collision," the court exonerated the *Haiti* from all liability, holding the *Duke* solely to blame for the collision. 131 F. Supp. 712. This finding was subsequently affirmed by the Court of Appeals and is not before us.[1] In reversing the dismissal of the cross-claims

---

[1] The United States had not filed a cross-claim against the *Duke* for damage to its vessel because, as it alleges, its counsel felt that it had waived recovery of any claim against a vessel of the British Government by virtue of the "Knock for Knock" Agreement, 56 Stat. 1780, E. A. S. 282, Dec. 4, 1942. Subsequently, while the appeal was pending, the British Government advised that it did not consider the *Duke* as a government vessel. Consequently, following the Court of Appeals decision, the United States filed a cross-claim against the *Duke* in the proceedings before the District Court.

the Court of Appeals reasoned that "Modern codes of procedure have reflected two facets: (1) all rights, if this can fairly be done, should be decided in a single legal proceeding; (2) parties who submit themselves to the jurisdiction of a court in a legal proceeding should be bound by that court's decision on all questions, appropriate to and seasonably raised in, that proceeding. Those ideas, we think, can reasonably be deduced from the spirit, if not the letter, of the 56th Admiralty Rule." 230 F. 2d, at 145.

The excellent coverage this Court's cases have given the historical incidents forming the background that went into the adoption of the Limited Liability Act relieves us of any minute recitation of that history. See *Norwich Co.* v. *Wright,* 13 Wall. 104 (1872); *Providence & N. Y. S. S. Co.* v. *Hill Mfg. Co.,* 109 U. S. 578 (1883); *The Main* v. *Williams,* 152 U. S. 122 (1894); *Just* v. *Chambers,* 312 U. S. 383 (1941). The history shows that although the Act was patterned on earlier English statutes its foundations sprang from the roots of the general maritime law of medieval Europe. "The real object of the act . . . was to limit the liability of vessel owners to their interest in the *adventure,*" *The Main* v. *Williams, supra,* at 131, and thus "to encourage ship-building and to induce capitalists to invest money in this branch of industry," *Norwich Co.* v. *Wright, supra,* at 121.

The Congress by the provisions of the Act left the form and modes of procedure to the judiciary. Twenty years after passage of the Act this Court adopted some general rules with respect to admiralty practice. See 13 Wall. xii and xiii. Rule 56 first came into the General Admiralty Rules as Rule 59.[2] As will be noted, it was originally

[2] Rule 56 was adopted as Rule 59 in 1883 as a codification of the decision in *The Hudson,* 15 F. 162 (1883). The Rule then provided in part:

"In a suit for damage by collision, if the claimant of any vessel

fashioned to accommodate cross-libels in marine collision cases, but acting upon the same inherent power to bring into the proceeding other parties whose presence would enable the court to do substantial justice in regard to the entire matter, the courts soon began to extend the practice by analogy to cases other than collision. See, e. g., *The Alert,* 40 F. 836 (1889); 3 Moore, Federal Practice (2d ed. 1948), 450–456. As it is expressed in 2 Benedict, Admiralty (6th ed. 1940), § 349, at 534, "the 'equity of the rule' was given wide extension and the principle . . . was applied by analogy to require the appearance of any additional respondent who might be responsible for the claim or a part thereof." In the 1920 revision the 59th Rule became the 56th General Admiralty Rule and, as amended by this Court, authorized either a claimant or respondent to bring in any other vessel or person "partly or wholly liable . . . by way of remedy over, contribution or otherwise, growing out of the same matter." 254 U. S. 707.[3] The present-day limitation proceeding,

proceeded against, or any respondent proceeded against *in personam,* shall, by petition, on oath, presented before or at the time of answering the libel, or within such further time as the court may allow, and containing suitable allegations showing fault or negligence in any other vessel contributing to the same collision, and the particulars thereof, and that such other vessel or any other party ought to be proceeded against in the same suit for such damage, pray that process be issued against such vessel or party to that end, such process may be issued . . . ." 112 U. S. 743.

The remainder of Rule 59 in its original form is substantially similar to the last two sentences of the present Rule 56.

[3] The present Rule 56 provides:

"In any suit, whether *in rem* or *in personam,* the claimant or respondent (as the case may be) shall be entitled to bring in any other vessel or person (individual or corporation) who may be partly or wholly liable either to the libellant or to such claimant or respondent by way of remedy over, contribution or otherwise, growing out of the same matter. This shall be done by petition, on oath, presented before or at the time of answering the libel, or at any later time

therefore, springs from the 1851 Act and this Court's rules. Neither source indicates that admiralty limitation precluded other ordinary admiralty procedures. In fact, as Mr. Justice Bradley put it in *The Scotland,* 105 U. S. 24, 33 (1881), "we may say, once for all, that [the rules] were not intended to restrict parties claiming the benefit of the law, but to aid them. . . . The rules referred to were adopted for the purpose of formulating a proceeding that would give full protection to the ship-owners in such a case. They were not intended to prevent them from availing themselves of any other remedy or process which the law itself might entitle them to adopt." Accord, *Ex parte Slayton,* 105 U. S. 451 (1882).

It is the Commission's contention that Rule 56 is wholly inapplicable to the adjudication of a claim of one co-claimant against another in a limitation proceeding. The rule, it says, refers to libels and the use of the word "claimant" includes only the claimant of the vessel in-

---

during the progress of the cause that the court may allow. Such petition shall contain suitable allegations showing such liability, and the particulars thereof, and that such other vessel or person ought to be proceeded against in the same suit for such damage, and shall pray that process be issued against such vessel or person to that end. Thereupon such process shall issue, and if duly served, such suit shall proceed as if such vessel or person had been originally proceeded against; the other parties in the suit shall answer the petition; the claimant of such vessel or such new party shall answer the libel; and such further proceedings shall be had and decree rendered by the court in the suit as to law and justice shall appertain. But every such petitioner shall, upon filing his petition, give a stipulation, with sufficient sureties, or an approved corporate surety, to pay the libellant and to any claimant or any new party brought in by virtue of such process, all such costs, damages, and expenses as shall be awarded against the petitioner by the court on the final decree, whether rendered in the original or appellate court; and any such claimant or new party shall give the same bonds or stipulations which are required in the like cases from parties brought in under process issued on the prayer of a libellant." 254 U. S. 707.

volved and not to those making claims against the vessel. But we have seen that Rule 56 has long been held to encompass cross-claims between parties in libel actions. This Court has held that limitation of liability petitions may also be determined by appropriate pleading in libel actions. See *The North Star,* 106 U. S. 17 (1882), and the discussion *infra.* It may therefore be said that a limitation proceeding not only provides concourse but serves the function of a cross-libel to determine the rights between petitioner and claimants as well; and equitable rights between the limitation petitioner and a claimant have long been recognized as encompassed in Rule 50.[4] *Moore-McCormack Lines, Inc.* v. *McMahon,* 235 F. 2d 142 (1956). It appears then that had this proceeding started out as a libel the Commission admittedly would have no complaint. And as we have pointed out, the Rules were not promulgated as technicalities restricting the parties as well as the admiralty court in the adjudication of relevant issues before it. There should therefore be no requirement that the facts of a case be tailored to fit the exact language of a rule. The initial petition filed in the limitation proceeding alleged that the *Duke* was wholly or partly at fault and asked for a "set-off" or "cross-claim" against it; the Commission entered the case not only to prove its claim but to contest this allegation of negligence against the *Duke.* The claimants are all

---

[4] Rule 50 provides:

"Whenever a cross-libel is filed upon any counterclaim arising out of the same contract or cause of action for which the original libel was filed, and the respondent or claimant in the original suit shall have given security to respond in damages, the respondent in the cross-libel shall give security in the usual amount and form to respond in damages to the claims set forth in said cross-libel, unless the court, for cause shown, shall otherwise direct; and all proceedings on the original libel shall be stayed until such security be given unless the court otherwise directs." 254 U. S. 702.

present in the litigation. The United States has now filed a cross-claim or cross-libel against the Commission, it already being a party to the suit and before the court. The question is not what "tag" we put on the proceeding, or whether it is a "suit" under Rule 56 or a libel *in personam,* or whether the pleading is of an offensive or defensive nature, but rather whether the Court has jurisdiction of the subject matter and of the parties. It is sufficient to say as did Chief Justice Taft for a unanimous Court in *Hartford Accident & Indemnity Co.* v. *Southern Pacific Co.,* 273 U. S. 207 (1927), "that all the ease with which rights can be adjusted in equity is intended to be given to the [limitation] proceeding. It is the administration of equity in an admiralty court. . . . It looks to a complete and just disposition of a many cornered controversy . . . ." *Id.,* at 216. See also the opinion of Chief Justice Hughes for a unanimous Court in *Just* v. *Chambers,* 312 U. S. 383, 386–387 (1941). We do not believe that the analogy to equity is shadowy. The claimants in this proceeding have just claims arising out of the collision of the *Haiti* and the *Duke.* They have as much interest in the potential liability resulting from that marine disaster as has the equity receiver in perfecting the *res* of the estate. The scope of the proceeding is not limited to a determination of the petitioner's fault nor to its interest in the *Haiti.* In fact, here the fault of the disaster, a matter of legitimate interest to the claimants, has been adjudicated against the Commission and it admits this judgment is *res judicata* in all courts. Why does it not follow that the claimants, scattered as they are in eight countries of the world but all present in this proceeding, should recover judgment for their damages? Why should each be required to file a secondary action in the courts of another country merely to prove the amount of his due when the same evidence is already before the admiralty court here?

Logic and efficient judicial administration require that recovery against all parties at fault is as necessary to the claimants as is the fund which limited the liability of the initial petitioner. Otherwise this proceeding is but a "water haul" for the claimants, a result completely out of character in admiralty practice. Furthermore, the Commission entered this proceeding voluntarily without compulsion. It filed an answer asking that justice be done regarding the subject matter, the collision; it denied all fault on its part and affirmatively sought to place all blame on the *Haiti;* it claimed damage in the sum of $1,500,000; and it contested the *Haiti's* claim of limitation or exoneration. In all of these respects judgment went against the Commission—it lost. Now having lost, it claims that the court has wholly lost jurisdiction while had it won, jurisdiction to enter judgment on all claims would have continued. It asserts that neither the *Haiti,* which was damaged to the extent of some $65,000, nor any of the other 115 claimants may prove their losses against it. But reason compels the conclusion that if the court had power to administer justice in the event the Commission had won, it should have like power when it lost. Whether it is by analogy to Rule 56 or by virtue of Rule 44,[5] or by admiralty's general rules heretofore promulgated by this Court, we hold it a necessary concomitant of jurisdiction in a factual situation such as this one that the Court have power to adjudicate all of the demands made and arising out of the same disaster. This too reflects the basic policy of the Federal Rules of Civil Procedure.

---

[5] Rule 44 provides:

"In suits in admiralty in all cases not provided for by these rules or by statute, the district courts are to regulate their practice in such a manner as they deem most expedient for the due administration of justice, provided the same are not inconsistent with these rules." 254 U. S. 698.

Admiralty practice, which has served as the origin of much of our modern federal procedure, should not be tied to the mast of legal technicalities it has been the forerunner in eliminating from other federal practices.

It is true that no case of this Court has passed on the question directly. However, examination of the practice of American admiralty courts indicates that cross-libel procedures have been resorted to between co-parties in a limitation *concursus* at least since *The North Star,* 106 U. S. 17 (1882). While initially that case was not a limitation proceeding, this Court held that both parties could have obtained a limitation of liability if entitled to it without the necessity of separate suits. In *The Manitoba,* 122 U. S. 97 (1887), both the libelant and the cross-libelant sought and received the benefit of liability limitation. Thereafter, in *The City of Boston,* 182 F. 171 (1909), a District Court allowed the filing of cross-claims in the limitation proceeding there begun. It is of interest to note that while there was no express rule at the time permitting such procedure it was granted "following the analogy of admiralty rule 59 [now Rule 56]." It was thought that "the same claim for contribution which . . . might [be recovered] in an independent suit" could properly be adjudicated by a cross-claim although there was no "reported precedent for the allowance of such a claim in limited liability proceedings." *In re Eastern Dredging Co.,* 182 F. 179, 183 (1909). In 1919 the Second Circuit decided *The Adah,* 258 F. 377, in which Judge Hough declared that "Whether it was necessary, in absolving the Adah, to fix blame on some one else, is a question we need not decide." But where the parties enter the limitation proceeding, the court held "It is enough that they did come in, and made parties of themselves. . . . Having become parties, they are bound by the decree entered in the suit wherein they are parties." *Id.,* at 381. And this was but the echo of

Mr. Justice Bradley in *The Scotland, supra,* where he said, "when parties choose to resort to [a nation's] forum for redress" they cannot "complain of the determination of their rights by that law . . . ." 105 U. S., at 31–32. Later in *In re United States Steel Products Co.,* 24 F. 2d 657 (1928), the Second Circuit squarely decided that cross-claims were properly considered in limitation proceedings. The United States' claim in limitation was "a right of suit in admiralty against the Steel Inventor," *id.,* at 659, the court said, which subjected it to cross-suit, citing *United States* v. *The Thekla,* 266 U. S. 328 (1924). See also *The Steel Inventor,* 43 F. 2d 958 (1930). And as recently as *Moore-McCormack Lines, Inc.* v. *McMahon,* 235 F. 2d 142 (1956), the Second Circuit unanimously reaffirmed the principles of these cases. It reasoned that since all of the claims arose out of the same incident they should be determined in a single cause, thus effectuating an "economy of trial litigation" so much desired in judicial administration.

Petitioner points to cases from the Second Circuit in which cross-claims were not permitted.[6] But we find none apposite to this case, other than perhaps *New Jersey Barging Corp.* v. *T. A. D. Jones & Co.,* 135 F. Supp. 97 (1955). That case held that the impleading of the claimant would convert a proceeding to limit the petitioners' liability to a proceeding by other claimants against the impleaded claimant. While it is sufficient to say that *New Jersey Barging Corp.* has subsequently, in effect, been overruled by the Second Circuit in *Moore-McCormack Lines, Inc.* v. *McMahon, supra,* we might add that it is easily distinguishable from the situation here.

---

[6] *Algoma C. & H. B. R. Co.* v. *Great Lakes Transit Corp.,* 86 F. 2d 708 (1936); *New Jersey Barging Corp.* v. *T. A. D. Jones & Co.,* 135 F. Supp. 97 (D. C. S. D. N. Y. 1955); *Petition of Texas Co.,* 81 F. Supp. 758 (D. C. S. D. N. Y. 1948); *Poling Bros. No. 5— Tom Wogan,* 1937 A. M. C. 1513 (D. C. E. D. N. Y.).

No answer was filed and no effort was made toward an affirmative defense, the claimant only having forwarded his statement of asserted damage by mail. Nor do we think *Algoma C. & H. B. R. Co.* v. *Great Lakes Transit Corp.,* 86 F. 2d 708 (1936), affords petitioner comfort. There Judge Learned Hand held that the railroad, in filing a limitation proceeding, had improperly laid venue. While there is some dicta in the opinion indicating that the petitioner in a limitation proceeding could recover nothing affirmatively, we agree with Judge Knox's interpretation of that case in his opinion in *The Clio—The Springhill,* 1948 A. M. C. 75, 77. In *Algoma* the original limitation petitioner had filed no counterclaim in its proceeding. Therefore nothing could be recovered affirmatively. The case therefore does not stand for the proposition that it would not be permissible for a counterclaim to be filed. The view that the counterclaim would be permissible is supported by *The Steel Inventor, supra,* and *In re United States Steel Products Co., supra,* in both of which Judge Hand participated.

Petitioner also depends heavily on *Department of Highways* v. *Jahncke Service, Inc.,* 174 F. 2d 894 (1949), an opinion of the Fifth Circuit. We believe it inapposite also. There Jahncke's barges tore loose in a windstorm and damaged the Department of Highways' bridge. Jahncke petitioned for limitation and the Department, after filing its claim and answer, then attempted to implead the Town of Madisonville, the owner of some other barges, which also had struck the bridge. Obviously there was no connection, other than the same wind and water, between Madisonville's barges which were independently moored and Jahncke's. Madisonville had filed no claim in Jahncke's limitation proceeding, the damages arising from a distinctly separate incident.

Petitioner points to the many dire consequences that may flow from exposing claimants to cross-claims. While

these predictions are entirely speculative and not before us, we comment on those which petitioner believes to be the more serious. First it says foreign claimants will be frightened away and will not file claims in American limitation proceedings. This result is more, says petitioner, "than just robbing Peter to pay Paul." But if petitioner prevailed both Peter and Paul would be robbed. While it is true that no compulsion could be exerted on foreign claimants to file claims and some would not do so thus preventing the determination of fault from being *res judicata* as to them; and while an injunction against suits being filed in foreign jurisdictions would be ineffective unless comity required its recognition; and assuming all this would encourage the filing of foreign suits and the levying of attachments on any offending American vessel while in a foreign port, or for that matter against any vessel of the same American owner; still this would have little practical effect on the operation of our limitation law. Most foreign claimants are foreign shipowners whose vessels visit American ports and are subject to like action by claimants living here. Self-protection would balance things out. But even if it did not, of what good is a judgment as to fault, even if *res judicata,* if a claimant recovers nothing? The proceeding here would become entirely abortive. Petitioner's theory makes the claimants no more than pawns in a game between the offending shipowners in which all that the claimants win after the successful battle is the right to fight another day for their due and in another court. It appears to us, therefore, that fairness in litigation requires that those who seek affirmative recovery in a court should be subject therein to like exposure for the damage resulting from their acts connected with the identical incident. The claimants here ask no more. That no foreign country permits such impleading should not force litigants in United States courts to forego such procedures. Foreign

limitation of liability procedures are for the most part different from ours where not only fault but claims are determined as part and parcel of the limitation action itself. We conclude that in the final analysis the manifest advantages of this cross-claim procedure serve the best interests of all of the parties before a court of the United States who find themselves the unfortunate victims of maritime disaster.

Other questions of procedural detail raised by the petitioner we leave to the trial courts. This has been the policy of this Court in the past in admiralty practice.

*Affirmed.*

Opinion of MR. JUSTICE BRENNAN, dissenting, with whom MR. JUSTICE FRANKFURTER and MR. JUSTICE HARLAN join, announced by MR. JUSTICE FRANKFURTER.

In terms, Admiralty Rule 56 authorizes cross-claim practice only in libel proceedings. The instant proceeding, however, is not a libel, but a limitation proceeding. I do not pause to examine the arguments marshalled by the Court in favor of cross-claim practice in limitation proceedings, for, in my opinion, if such practice is desirable, it should be introduced by amending the Admiralty Rules, and not by a decision in a particular litigation which was commenced by the original litigants without knowledge on their part or the Admiralty Bar that such a practice obtained in limitation proceedings.

It is inequitable, in the circumstances of this case, to apply to the British Commission a practice first announced today. The contracts of passage between the Commission and its co-claimants were not entered into under American law. The *Duke of York* was a passenger ferry operating on a fixed schedule between the Hook of Holland and Harwich, England. The 437 passengers aboard at the time of the collision held tickets for trans-

portation across the North Sea from a railroad station in Holland to a railroad station in Harwich. Those tickets were contracts of passage containing provisions for exoneration from liability more favorable than are allowed by American law. There is no challenge to the statement in a footnote to the Commission's brief that

"Under English law the amount at which liability may be limited is far lower than in the United States, generally £15 per ton of tonnage. Merchant Shipping Act 1894 (57 & 58 Vict. c. 60) Sec. 503. Furthermore, the English rules of liability are substantially different from those applied in our courts. *A carrier under English law may by appropriate contract and notice limit its liability for negligence, and periods of limitation for the assertion of damage or loss are different.* See Collision Claims—Difference Between British and U. S. Law, Lloyds List and Shipping Gazette, July 14, 1953." (Emphasis added.)

And see *Adler* v. *Dickson*, [1954] 2 Lloyd's List L. R. 267 (C. A.). There is at least a substantial prospect that in the American courts these more favorable English rules of liability may not be fully recognized and applied. Congress has said that provisions or limitations exonerating a shipowner from liability for negligence or from liability beyond a stipulated amount are against the public policy of the United States, and shall be null and void and of no effect. See, *e. g.*, R. S. § 4283, as amended, 49 Stat. 1480, 46 U. S. C. § 183 (c); Note, 65 Yale L. J. 553; *Moore* v. *American Scantic Line*, 30 F. Supp. 843.

The British Commission could not have been compelled to enter the limitation proceeding, but did so voluntarily. We may reasonably infer that its decision to participate was based upon its understanding of the issues it would be called upon to face. The notice of

those issues gave not the slightest hint that the Commission would be required to answer to other claimants who might enter the proceedings. The notice was:

> "Notice is given that the United States of America has filed a petition pursuant to Title 46, U. S. Code, sections 183–189 and 789, *claiming the right to exoneration from or limitation of liability for all claims arising on the voyage of the USNS HAITI VIC-TORY from New York City to Bremerhaven, Germany, terminating on May 8, 1953, at Bremerhaven.* All persons having such claims must file them, under oath, as provided in United States Supreme Court Admiralty Rule 52, with the Clerk of this Court, at the United States Court House at Granby Street, Post Office Building, Norfolk, Virginia, and serve on or mail to the petitioner's proctors . . . at . . . a copy on or before October 15, 1953, or be defaulted. Personal attendance is not required. Any claimant desiring to contest the claims of petitioner must file an answer to said petition, as required by Supreme Court Admiralty Rule 53, and serve on or mail to petitioner's proctors a copy." (Emphasis added.)

Plainly this notice told the Commission only that if it chose to enter this proceeding it must be prepared to contest the claims of the United States to exoneration from or limitation of liability for claims arising out of the collision. That issue did not in anywise draw in the Commission's defenses against claims of the *Duke of York's* passengers. The Commission therefore had no information to alert it that it might hazard its defenses under its contracts of passage if it entered the proceeding. The Commission thus had no fair opportunity to weigh that factor in reaching the very practical decision whether to enter the American proceeding or to stay out and meet

all claimants on its home grounds. It is a fundamental of American justice that a litigant shall have fair notice of what he will be called upon to meet. In holding that, although the Commission was not given such notice, it must litigate the cross-claims here, the Court, in my view, denies equity in the name of equity.

I would reverse the judgment of the Court of Appeals and direct affirmance of the decree of the District Court.