In the Matter of BLOOMFIELD STEAM-SHIP COMPANY, as Owner of the STEAMSHIP LUCILE BLOOMFIELD, Praying for Exoneration from, or Limitation of, Liability.

No. 6205, Division D.

United States District Court
E. D. Louisiana,
New Orleans Division.

March 13, 1964.

Eikel, Feltner & Goller, Robert Eikel, Houston, Tex., Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Robert B. Acomb, Jr., New Orleans, La., for Bloomfield Steamship Co.

Haight, Gardner, Poor & Havens, Charles S. Haight, New York City, Terriberry, Rault, Carroll, Yancey & Farrell, Walter Carroll, Jr., Benjamin W. Yancey, New Orleans, La., for Charles S. Haight, Haight, Gardner, Poor & Havens, and A/S J. Ludwig Mowinckels Rederi.

Bigham, Englar, Jones & Houston, New York City, Montgomery, Barnett, Brown & Read, John P. Hammond, Henry

J. Read, New Orleans, La., for International Paper Co., Pathe Equipment Co., National Ben Franklin Ins. Co. of Pittsburgh, Pennsylvania, Hanover Ins. Co., Ingersol-Rand Co., Seeburg Corp. and Atlantic Mutual Ins. Co.

AINSWORTH, District Judge.

On October 1, 1963, the SS LUCILE BLOOMFIELD, owned and operated by Bloomfield Steamship Company, collided on the high seas outside the Port of LeHavre, France, with a Norwegian flag vessel, M/V RONDA, owned by A/S J. Ludwig Mowinckels Rederi. The RONDA continued to LeHavre but capsized and sank at the quay as a result of a fracture to her hull. The LUCILE BLOOMFIELD was able to resume her voyage and return to the United States.

International Paper Company, et al., owners of cargo aboard the RONDA, filed a libel on October 9, 1963 in the United States District Court for the Southern District of New York against Bloomfield Steamship Company *in personam* and the SS LUCILE BLOOMFIELD *in rem* to recover for damages sustained as a result of the collision. Sixteen days later, on October 25, 1963, Bloomfield Steamship Company, as owner of the SS LUCILE BLOOMFIELD, filed its petition in this court praying for exoneration from, or limitation of, liability. On the same day we issued a monition order in the usual form under 46 U.S.C.A. § 185, restraining and enjoining the beginning of prosecution of any and all suits, actions or legal proceedings of any nature against petitioner and the SS LUCILE BLOOMFIELD, except in the present proceedings, in respect to any claim arising out of the collision, until the hearing and determination of this proceeding. The order was duly published in a daily newspaper in New Orleans. The restraining order was served by petitioner on Messrs. Haight, Gardner, Poor & Havens, New York attorneys for the RONDA, and a copy was mailed to Mowinckels, owner of the RONDA, at Bergen, Norway.

A few minutes after the filing of the limitation proceeding, and without knowledge thereof, Westchester Fire Insurance Company, underwriter of cargo aboard the RONDA, filed a libel in this court against the SS LUCILE BLOOMFIELD and Bloomfield Steamship Company; the libel was later withdrawn on December 16, 1963.

On January 24, 1964, proceedings were instituted in an admiralty court in England by Mowinckels, owner of the RONDA, against Bloomfield and the LUCILE BLOOMFIELD. The LUCILE BLOOMFIELD was seized at Southampton, England, by the Admiralty Marshal and released only after furnishing security in the amount of $420,000.

Bloomfield contends that it is not amenable to service of process in New York growing out of the libel filed in the federal court in the Southern District of New York, because it is not doing business in the State of New York. Two related motions are presented for decision, namely, the motion of Bloomfield against Haight, Gardner, Poor & Havens, New York counsel for the RONDA, and Mowinckels, owner of the RONDA, for contempt for prosecuting its claim in the English admiralty court after issuance of our restraining order on October 25, 1963, and the motion to dismiss the limitation proceeding for lack of jurisdiction.

I.

Haight, Gardner, Poor & Havens and the owners of the RONDA excepted to the contempt action, contending that the owners of the RONDA are not parties to the limitation proceeding and that our restraining order of October 25, 1963 can have no extra-territorial effect beyond the limits of the United States as would prohibit bringing an action in an English court, even if New York counsel for and the owners of the RONDA were aware of our restraining order, having been served with copies thereof as heretofore stated.

We assume arguendo the well-pleaded allegations of the motion for contempt. From these allegations it is

averred that Haight, Gardner, Poor & Havens and the RONDA'S owners knew of the existence of our restraining order when they caused their English solicitors to file a libel in the English admiralty court and caused the vessel to be seized. However, an order or decree in a limitation proceeding is given mere domestic and not international recognition. Gilmore and Black, The Law of Admiralty, p. 739. Justice Holmes's opinion in The Titanic, 233 U.S. 718, 34 S.Ct. 754, 58 L.Ed. 1171 (1914), clearly assumes the merely domestic effect of a limitation decree, according to Gilmore and Black (p. 739). In his opinion Justice Holmes said (233 U.S. 718, 732, 34 S.Ct. 754, 756, 58 L.Ed. 1171):

"The question is not whether the owner of the Titanic by this proceeding can require all claimants to come in, and can cut down rights vested under English law, as against, for instance, Englishmen living in England, who do not appear."

Litigants who chose to sue the owners of the TITANIC in United States courts were limited in their recovery by the American law of limitation which was held to be applicable rather than the English limitation law despite the fact that the TITANIC was a British flagship lost on the high seas after collision with an Atlantic iceberg.

In the related case of The Titanic, 2 Cir., 1915, 225 F. 747, foreign claimants who had filed in the American limitation proceeding were permitted to withdraw their claims though it appeared that the purpose of the withdrawal was to proceed in the English courts where a better recovery could be had. The court held that the district court could not retain jurisdiction for the reason that if it released the claimants they might get relief in some other tribunal. It said (225 F. p. 748):

"When they have withdrawn they are as free from it for all purposes as if they never had been parties."

That being true, a potential claimant who has not filed his claim in the United States limitation proceeding has the right to pursue his claim in a foreign court if he so chooses and can obtain jurisdiction. The fact that the owners of the RONDA and their counsel were aware of the limitation proceeding here when they caused their libel to be filed in an English admiralty court does not preclude them under such circumstances from seeking enforcement of their rights in the English courts. British Transport Comm. v. United States (The Duke of York—Haiti Victory), 354 U.S. 129, 77 S.Ct. 1103, 1 L.Ed. 2d 1234 (1957). See also Kloeckner Reederei Und Kohlenhandel G.M.B.H. v. A/S Hakedal, 2 Cir., 1954, 210 F.2d 754; Motor Distributors v. Olaf Pedersen's Rederi A/S, 5 Cir., 1956, 239 F.2d 463. In The Duke of York, the Supreme Court held that an injunction against suits being filed in foreign jurisdictions would be ineffective unless comity required its recognition. Comity as between the United States and Great Britain is not shown to exist.

The motion for contempt is denied.

## II.

The motion to dismiss the limitation proceeding is grounded on lack of jurisdiction for failure of petitioner to comply with Supreme Court Admiralty Rule 54 which provides as follows:

"Rule 54. Courts having cognizance of limited liability procedure

"The said petition shall be filed and the said proceedings had in any District Court of the United States in which said vessel has been libeled to answer for any claim in respect to which the petitioner seeks to limit liability; or, if the said vessel has not been libeled, then in the District Court for any district in which the owner has been sued in respect to any such claim. When the said vessel has not been libeled to answer the matters aforesaid, and suit has not been commenced against the said owner, the said proceedings may be had in the District Court of the dis-

trict in which the said vessel may be, but if said vessel is not within any district and no suit has been commenced in any district, then the petition may be filed in any District Court. The District Court may, in its discretion, transfer the proceedings to any district for the convenience of the parties. If the vessel shall have already been sold, the proceeds shall represent the same for the purposes of these rules. Amended June 21, 1948."

■ Movers contend that Bloomfield was sued in the New York federal court sixteen days prior to filing of the limitation proceeding here; therefore, that under Admiralty Rule 54, the limitation proceeding must also be filed in the same New York federal court. However, petitioner Bloomfield contends that it was not properly sued in New York and is not amenable to process there because it is not doing business in the State of New York. The critical question then for decision is whether Bloomfield is actually doing business in New York. If it is, there is no question that the New York suit was filed first and was the only suit pending when the limitation was filed in this court. The suit of Westchester Fire Insurance Company versus the SS LUCILE BLOOMFIELD and Bloomfield Steamship Company was filed several minutes after the limitation was filed here, and there is authority that where there are several causes of action pending when the limitation petition is filed, there is nothing in the rule which in any way indicates that it must be or should follow the venue of the first suit. In re Petition of Oskar Tiedemann & Company, 3 Cir., 1958, 259 F.2d 605. But in Tiedemann the court held that where there is just one suit or libel filed, as was the case here, the shipowner has no choice but to bring his petition in the only court where litigation is pending against his vessel. Under the circumstances, the New York federal court is the proper court for filing of the limitation proceeding, and under Admiralty Rule 54 is the only one in which the lim-

itation could be filed if it be found that Bloomfield was doing business in New York at the time suit was filed in the United States court in New York.

In a similar case, In re Butcher, D.C. S.D.Tex., 1943, 52 F.Supp. 385, suit was pending in the United States District Court for the Eastern District of Louisiana against the owners of a barge for damages growing out of an explosion. The vessel owners filed their limitation petition in the United States District Court for the Southern District of Texas when one of the barges was within the jurisdiction of that court. But the Texas federal court declined to entertain jurisdiction of the limitation proceeding and granted the motion to dismiss the petition because of the prior filing of the suit in this court.

In order to determine the facts relative to Bloomfield's doing business in New York, depositions were taken by movers of certain employees of Bloomfield's New York agent on February 7, 10 and 11, 1964. It is shown that Bloomfield's ships do not call at the Port of New York. However, Bloomfield has a berth agent in New York, namely, States Marine Lines, Inc. and its wholly owned subsidiary, States Marine-Isthmian Agency, Inc. States Marine solicits business for Bloomfield in New York, and during the year 1963, 4.76 per cent of tonnage of the cargoes carried by Bloomfield were contracted for in New York by its berth agent and the bills of lading issued by the berth agent for such cargoes constituted 7.32 per cent by number of the total number of bills of lading issued by the company.

The two States Marine companies have their head office at 90 Broad Street, New York City. The Agency contract was made in 1954 but since 1956 most of the services performed for Bloomfield had been done by States Marine-Isthmian, to whom Bloomfield makes payment for fees and commission owed by it. States Marine advertises for Bloomfield in the New York Journal of Commerce and provides that paper with sailing schedules of Bloomfield ships. States-Marine is listed

in the telephone tickler of the Journal of Commerce as agent for Bloomfield. States Marine has a staff of fifteen sales representatives, all of whom solicit cargo for Bloomfield in the New York area, and one man, Androvette, is the Bloomfield specialist who has available all data concerning activities of Bloomfield vessels, their cargoes, manifests, stowage plans, schedules and daily position.

When Bloomfield, as owner of the SS NEVA WEST, sued the United States Lines in the New York federal court in 1961, it alleged that it was a Texas corporation with an office at 90 Broad Street, New York. Contracts confirming bookings for Bloomfield are issued to shippers and freight forwarders through the New York office of States Marine which also issues bills of lading to shippers for shipments on Bloomfield vessels and accepts and answers inquiries and discusses special transportation problems of local shippers relative to Bloomfield services. States Marine's New York office collects freight moneys for Bloomfield through its New York office. States Marine also makes recommendation to Bloomfield for the scheduling of voyages.

■■ The leading cases on the subject of whether a corporation is doing business in a state are found in United States Supreme Court decisions in International Shoe Co. v. State of Washington, etc., 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and McGee v. International Life Insurance Company, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), which cites with approval International Shoe Co. The Supreme Court held in International Shoe Co. "that 'due process requires only that in order to sub-

ject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." ' " In McGee, the court said that "a trend is clearly discernible toward expanding the permissible scope of state jurisdiction over foreign corporations and other nonresidents." The test is therefore whether there are minimal business contacts sufficient to justify such a finding without offending against traditional notions of fair play and substantial justice. We are satisfied that the facts amply disclose a considerable doing of business in the State of New York. Bloomfield has pointed out that the Supreme Court of the State of New York (Justice Loreto) in Lanier v. Bloomfield Steamship Co., in 1963, held that Bloomfield was not doing business in the State of New York. We do not know what facts that court had before it in making this determination. We are of the belief that if it had the evidence furnished us in this case it would have decided otherwise.[1] Nevertheless, we are obliged to make an independent determination ourselves of the facts, and we hold that under the rule of the International Shoe and McGee cases it has been established that Bloomfield is in fact doing business in the State of New York. Under the circumstances, Admiralty Rule 54 has not been complied with because limitation proceeding should have been filed in the United States District Court for the Southern District of New York. Accordingly, the limitation proceeding is dismissed for failure to comply with Rule 54.

---

1. The memorandum opinion in Lanier v. Bloomfield Steamship Co. states in part that "On the conceded facts, it does not appear that it was doing business in this state at the time of the service so as to bring it within the provisions of section 229 of the Civil Practice Act (now section 311(1) of the Civil Practice Law and Rules)." And the decision also states "The mere solicitation in this state of cargo for transportation outside this state by a berth agent of defendant does not constitute the necessary doing of business here by the defendant to permit of valid service upon it by service upon the berth agent." The court therefore declined jurisdiction. The evidence before us goes far beyond "mere solicitation" as we have pointed out in our brief summary of the facts.