422 F.2d 728
 Petition of BLOOMFIELD STEAMSHIP COMPANY,
Petitioner-Appellant-Appellee, Shapiro &
Whitehouse, Inc., et al., Taylor
Instrument Co., et al.,
Claimants-Appellants. Petition of A/S J. LUDWIG MOWINCKELS
REDERI, Petitioner-Appellee, Bloomfield Steamship
Company, Claimant-Appellant (And 2 Other Cases).
 Nos. 452-454, Dockets 33681, 33947, 34015.
 United States Court of Appeals, Second Circuit.
 Argued Jan. 14, 1970.
Decided Feb. 26, 1970.
 
 Robert Eikel, Houston, Tex. (Eikel & Goller, Houston, Tex., and Healy & Baillie, Thomas L. Rohrer, New York City, of counsel, on the brief), for petitioner-appellant Bloomfield Steamship Co.
 Richard G. Ashworth, New York City (Haight, Gardner, Poor & Havens, Charles S. Haight, Jr., New York City, of counsel, on the brief), for appellee A/S J. Ludwig Mowinckels Rederi.
 Donald M. Waesche, Jr., New York City (Bigham, Englar, Jones & Houston, Douglas A. Jacobsen, New York City, of counsel, on the brief), for claimants-appellants Taylor Instrument Co. and others.
 Before KAUFMAN and FEINBERG, Circuit Judges, and PALMIERI, District Judge.[1]
 PALMIERI, District Judge:
 This litigation arises from the nighttime collision of two slow-moving cargo vessels, one the American-flag vessel SS Lucile Bloomfield, owned by Bloomfield Steamship Company (Bloomfield), the other the Norwegian-flag vessel M/V Ronda, owned by A/S J. Ludwig Mowinckels Rederi (Mowinckels). The collision occurred in international waters near the pilot station off the port of Le Havre, France, on October 1, 1963. The outbound Lucile Bloomfield had just disembarked the harbor pilot and was preparting to set a course to Antwerp. The inbound Ronda was approaching the pilot vessel to take a harbor pilot aboard. After the collision the Bloomfield continued her voyage to Antwerp since her damage was slight and no assistance was required of her. The Ronda, her hull fractured on the starboard side, proceeded to Le Havre where she docked. She was so severely damaged, however, that she capsized at quay the following day with the entire loss of her cargo valued at over two million dollars. The Bloomfield sustained damages of only about $8,000, none of it to her cargo. There were no personal injuries.
 The case is here after the consolidation of petitions of both vessels for exoneration from or limitation of liability, 46 U.S.C. 181-195. Following the collision a spate of litigation took place in the courts of the United States, England and France. Much of it was concerned with a persistent but unsuccessful effort by Bloomfield to stay an action for collision damages brought by Mowinckels in England. The Ronda cargo claimants settled with Mowinckels before trial but proceeded to trial in the Bloomfield limitation proceeding. Since limitation was granted, these claimants recovered only a part of their provable damages. They are seeking to break the limitation on this appeal.
 The principal issues in the case relate to the propriety of Mowinckels' English admiralty action, questions of damages between Bloomfield and Mowinckels, and whether limitation was properly granted to Bloomfield.
 Even a brief account of the protracted litigation which preceded the trial makes dreary reading. It is necessary, however, in order to understand the legal relationships of the parties and their postures on this appeal.
 On October 9 and 11, 1963, cargo interests and marine insurers concerned in the cargo laden on board the M/V Ronda, filed libels in the court below against the Lucile Bloomfield and her owner, and against the Ronda and her owner.
 On October 25, 1963, Bloomfield filed a petition for exoneration from or limitation of liability in the United States District Court at New Orleans. This petition was dismissed by that court on March 13, 1964, on the ground that Bloomfield was in fact doing business in the State of New York and that in consequence Rule 54 of the General Admiralty Rules required the proceedings to be filed in the Southern District of New York. In re Bloomfield Steamship Co., 227 F.Supp. 615 (E.D.La.1964), aff'd sub nom. Bloomfield Steamship Company v. Haight, 363 F.2d 872 (5th Cir. 1966) (per curiam), cert. denied, 386 U.S. 913, 87 S.Ct. 864, 17 L.Ed.2d 785 (1967).
 On January 16, 1964, Mowinckels commenced an action in admiralty against Bloomfield in the High Court of Justice, London, England. Availing itself of the presence of the Lucile Bloomfield at the port of Southampton, Mowinckels brought about the seizure of the vessel by the Admiralty Marshal; upon the filing of a $425,000 bond by Bloomfield the vessel was released.
 In the meantime, and on November 22, 1963, Mowinckels appeared in the action against it brought by the cargo claimants in the court below.
 The service upon Mowinckels of a monition and restraining order in the limitation proceedings initiated by Bloomfield in Louisiana served as a basis for Bloomfield's unsuccessful attempt to hold Mowinckels and its attorneys in contempt for instituting suit in England allegedly in violation of the restraining order. The court held that the injunction had no extraterritorial effect. In re Bloomfield Steamship Co., supra. Bloomfield was also unsuccessful (April 24, 1964) in seeking to dismiss the action in the English High Court of Justice, London, England. The Lucile Bloomfield, (1964) Lloyd's L.Law Rep. 324, 329.
 On March 30, 1964, Bloomfield instituted a limitation proceeding in the Southern District of New York posting a bond of $750,000 and a monition and restraining order were served on Mowinckels shortly thereafter. Mowinckels did not file a claim in Bloomfield's limitation proceeding in which the only claimants were the Ronda cargo interests. On the same day Bloomfield filed a libel against Mowinckels in the district court in Louisiana to recover collision damages. This proceeding was subsequently transferred to the court below.
 On March 31, 1964, Mowinckels instituted a limitation proceeding in the Southern District of New York specifically excepting Bloomfield. Judge Tenney below held that Mowinckels' exclusion of Bloomfield was improper and directed a dismissal unless an amended petition were filed extending its application and the accompanying restraining order to Bloomfield. Mowinckels amended its petition. Cargo claimants also filed in the Mowinckels limitation proceedings, but all their claims were settled before trial, leaving Bloomfield as the sole claimant in that proceeding.
 Bloomfield thereafter and on November 30, 1964, moved to dismiss the amended petition for failure to file within the six month statutory period and to stay the admiralty proceedings instituted by Mowinckels against it in England. Both these motions were denied by Judge Tenney. 268 F.Supp. 682 (S.D.N.Y. 1967).
 The Bloomfield and Mowinckels limitation proceedings in the lower court were consolidated for trial. They were, by post-trial motion, consolidated with Bloomfield's action against the Ronda for collision damages. After trial before Judge MacMahon, the following decisions were reached and are reflected in the judgment from which an appeal is now taken:
 Both vessels were navigated negligently and they were both to blame for the collision; the Lucile Bloomfield was jointly liable with the Ronda for the subsequent loss of the Ronda's cargo; Bloomfield as owner of the Lucile Bloomfield was entitled to limit its liability to cargo claimants. Since Ronda had settled with cargo interests the only two issues remaining related to Bloomfield's claims for collision damages and for indemnification of its payments to cargo claimants. Judge MacMahon held that under the admiralty rule of divided damages Bloomfield was entitled to recover $3,989.60, one-half of the amount stipulated as the collision damages suffered by the Lucile Bloomfield; lastly he held that Bloomfield could not obtain indemnification from Ronda as joint tort-feasor on its payments to cargo claimants since such a claim could be asserted only to the extent that such payments exceeded one-half cargo's total damage claim; and since there was no such excess Bloomfield was not entitled to indemnification from Ronda. 298 F.Supp. 1239 (S.D.N.Y.1969).
 Various Ronda cargo interests sued both vessels in the Tribunal of Commerce in Rouen. The Le Havre Port Authority sued Mowinckels for wreck removal in the Administrative Tribunal in Rouen. Both vessels were held in contributory fault and liable to the Ronda cargo, subject to limitation, and Mowinckels was held liable to the Le Havre Port Authority for removal of the Ronda wreckage subject to limitation. Both judgments are presently on appeal. However, following the decision in New York, cargo claimants chose to withdraw their French suits against Bloomfield, in order to collect their judgment in the court below.
 The English litigation resulted in both vessels being held in contributory fault. This holding was affirmed on appeal, and Bloomfield was held liable for half the Ronda's damages, subject to limitation. The Lucile Bloomfield, (1966) 2 Lloyd's List L.R. 239 (Adm.), appeal dismissed, (1967) 1 Lloyd's List L.R. 341 (Ct. of App.); The Lucile Bloomfield, (1967) 2 Lloyd's List L.R. 308 (Adm.).
 In approaching the contentions contained in the appeals before us, we will discuss in the following order the suit by Mowinckels for its collision damages in the English courts, the damage and procedural issues raised by Bloomfield, and lastly the challenge by cargo claimants to the grant of limitation to Bloomfield.
 There was no impropriety in the suit for collision damages brought by Mowinckels against Bloomfield in England.
 Throughout this litigation, in the many proceedings in the lower courts, before the United States District Court in New Orleans and the appeals that followed the aborted limitation proceedings filed in that court, Bloomfield has repeatedly and unsuccessfully contended that Mowinckels acted improperly, indeed in defiance of United States restraining orders, in bringing suit in England. Bloomfield presses the same contention here. We are constrained to reject it for the reasons which follow.
 The first of the United States limitation injunctions was entered in the United States District Court at New Orleans in October 1963. A copy was served on Mowinckels' New York counsel and a copy was mailed to Mowinckels at Bergen, Norway. The proceedings before the admiralty court in England were instituted by Mowinckels in January 1964.
 In seeking to hold Mowinckels' New York attorneys and Mowinckels in contempt for the alleged violation of the court's restraining order, Bloomfield raised squarely before the district court in New Orleans the propriety of Mowinckels' action before an English court. The restraining order upon which Bloomfield proceeded was issued in the usual form under 46 U.S.C. 185. It restrained and enjoined the beginning of prosecution of any and all suits, actions or legal proceedings of any nature against Bloomfield and its vessel, the SS Lucile Bloomfield.
 Judge Ainsworth of the United States District Court in New Orleans (now a judge of the United States Court of Appeals, Fifth Circuit) was supported by controlling and persuasive authority in holding that an order or decree in a limitation proceeding is given 'mere domestic and not international recognition.' In re Bloomfield Steamship Co., supra 227 F.Supp. at p. 617, citing Gilmore and Black, The Law of Admiralty, p. 739; Justice Holmes' opinion in The Titanic, 233 U.S. 718, 732, 34 S.Ct. 754, 58 L.Ed. 1171 (1914), and the related case of The Titanic, 225 F. 747 (2d Cir. 1915). Judge Ainsworth thereupon concluded that 'a potential claimant who has not filed his claim in the United States limitation proceeding has the right to pursue his claim in a foreign court if he so chooses and can obtain jurisdiction,' citing British Transport Comm'n v. United States, 354 U.S. 129, 77 S.Ct. 1103, 1 L.Ed.2d 1234 (1957). In consequence the motion for contempt was denied. The Court of Appeals for the Fifth Circuit affirmed Judge Ainsworth's rulings and adopted his 'careful opinion' as its own, paraphrasing its holding to be that 'Mowinckels was not in contempt on the ground that the injunction had no extraterritorial effect.' Bloomfield Steamship Company v. Haight, supra 363 F.2d at p. 873.
 There can be no question, as Bloomfield argues on this appeal, that one purpose of the Limitation Act is a concursus or concourse of claimants, and that in an appropriate situation the court may have power to enjoin persons within its jurisdiction with respect to their activities abroad. That is the purport of the holdings in The Salvore, 36 F.2d 712 (2d Cir. 1929), cert. denied 287 U.S. 653, 53 S.Ct. 117, 77 L.Ed. 565 (1932), and A. C. Dodge Inc. v. J. M. Carras, Inc., 218 F.2d 911 (2d Cir. 1955), upon which it relies upon this appeal. But the exercise of the power to do so always involves a balancing of the equities in each case. As Chief Justice Taft stated in his classic analysis of the nature of a limitation proceeding in Hartford Accident & Indemnity Co. v. Southern Pacific Co., 273 U.S. 207, 215, 47 S.Ct. 357, 359, 71 L.Ed. 612 (1927):
 'It is quite evident from these cases that this court has by its rules and decisions given the statute a very broad and equitable construction for the purpose of carrying out its purpose, and for facilitating a settlement of the whole controversy over such losses as are comprehended within it, and that all the ease with which rights can be adjusted in equity is intended to be given to the proceeding. It is the administration of equity in an admiralty court.'
 And Judge Tenney's opinion below reflects a careful consideration of the relevant equities.
 It is worth stressing that Mowinckels, a Norwegian shipowner, was seeking to recover its collision damages in a neutral English court as the result of a collision in international waters and a sinking in a foreign port. It was in this English litigation that Mowinckels and Bloomfield were for the first time in an adversary relationship to each other.
 As the case developed before the Southern District Court, Mowinckels subsequently petitioned for limitation in defense to the cargo damage suit against it. When Mowinckels was compelled by the lower court to amend its petition to include Bloomfield, thereupon Bloomfield sought, again unsucessfully, to restrain the English admiralty action by Mowinckels. Mowinckels had abstained from filing any claim in the Bloomfield limitation proceedings, either in the New Orleans district court or in the district court in New York. It did this, as it was entitled to do, in order to preserve the integrity of its action before the English courts. Since Mowinckels was before the court below, albeit defensively, and because of the action by cargo claimants, its presence prompted the not so easily discouraged Bloomfield to seek a stay of Mowinckels' prosecution of its English suit. This was denied by Judge Tenney upon equitable considerations holding, in essence, that it would be unjust to penalize a shipowner (Mowinckels) who is forced to file a limitation proceeding for its own protection by ordering such shipowner to discontinue its own previously instituted suit in another jurisdiction to recover its collision damages. 268 F.Supp. 682, at p. 691. Furthermore, the lower court considered the holdings in The Salvore, supra, and A. C. Dodge Inc. v. J. M. Carras, Inc., supra, and held correctly that under its equitable powers a district court has discretion to condition the granting of a limitation injunction, sought by a shipowner, upon the shipowner voluntarily discontinuing litigation it has brought in another jurisdiction.
 It must be stressed that prior to the commencement of the English admiralty proceedings. Mowinckels and Bloomfield, despite the latter's contentions to the contrary, were not in an adversary posture before any court. This occurred, so far as the United States courts were concerned, after the English litigation was well in train, and when Mowinckels was compelled by Judge Tenney to amend its petition in the limitation proceeding below extending the application of the petition and the accompanying restraining order to Bloomfield. The amendment which followed placed Mowinckels and Bloomfield in adversary status for the first time in an American court. Concededly, the lower court could have restrained Mowinckels' continuance of its collision action in the English courts. But it declined to do so. We can find no fault in this decision. Under the circumstances of this case the lower court's decision was an appropriate exercise of its discretion.
 In any event, the passage of time and circumstances has overtaken the ruling. Mowinckels settled with all its cargo claimants before trial. Its only adversary at the trial was Bloomfield and all the issues with Bloomfield, except Mowinckels' collision damages, have been disposed of. The decision below was proper. Mowinckels contravened no rights of Bloomfield by suing in England and need not have been compelled to forego or stay that action as a condition of its petition in the limitation proceeding. Judge Tenney and Judge MacMahon properly refused below to let Bloomfield accomplish indirectly, using Mowinckels' limitation proceeding as a vehicle, that which it could not do in its own limitation proceeding.
 The English judgment is res judicata.
 Between Mowinckels and Bloomfield there can be no question, as the district court held, that the judgment in Mowinckels' suit in England for collision damages against Bloomfield is res judicata. No challenge has been made to the competency of the English courts to determine liability on the part of both vessels. Indeed an examination of the English judgments makes it clear that the issue of fault in the collision was exhaustively litigated and subjected to close and expert scrutiny by the courts involved. The parties to that litigation are bound by its result and the judgment was properly held to be res judicata. British Transport Comm'n v. United States, supra354 U.S. at p. 142, 77 S.Ct. 1103; The Benefactor Steamship Co. v. Mount,103 U.S. 239, 243, 26 L.Ed. 351 (1880); Hilton v. Guyot, 159 U.S. 113, 202-203, 16 S.Ct. 139, 40 L.Ed. 95 (1894); The Kaiser Wilhelm der Grosse,175 F. 215 (S.D.N.Y.1909). Because of the complexity of the case and the spate of litigation following the collision, the district court nevertheless considered the issue of liability for the collision and concluded on sufficient evidence that both vessels were to blame and in consequence held them to be jointly liable. We find no error in this conclusion. We do not agree with Bloomfield's suggestion that the absence of the Ronda cargo claimants from the English litigation impairs the res judicata effect of the English judgment.
 The damages were properly assessed by the district court.
 It was stipulated that Bloomfield's collision damages amounted to $7,979.20. Bloomfield's limitation fund was fixed at $680,817.24 by the trial court. Cargo claimants' total damages came to $1,863,000. It was stipulated that Mowinckels' $200,000 payment in settlement of the cargo claims against it would reduce the cargo damage claims against Bloomfield pro tanto. By deducting $200,000 from $1,863,000 and dividing the result by two, one arrives at the one-half of the cargo claims for which Bloomfield was held liable. It can be expressed thus:
 $1,863,000 minus $200,000=$1,663,000 (total cargo damage claims)
 $1,663,000 divided by 2 = $831.500 (liability of Bloomfield for cargo damage)
 Since the limitation fund of $680,817.04 was less than the one-half of cargo's total damage claims just illustrated, $831,500, the trial court found that Bloomfield was not entitled to contribution from the Ronda. It based its conclusion on the principle that 'Bloomfield as a joint tort-feasor can recover such payments only to the extent they exceed one-half cargo's total damage claim.' This conclusion was correct.
 The principle of contribution between joint tort-feasors is a well-recognized admiralty rule in a both-to-blame collision case such as this. Claims arising from payments to third parties are for 'contribution as between joint tort-feasors.' Halcyon Lines v. Haenn Ship Corp., 342 U.S. 282, 285, 72 S.Ct. 277, 279, 96 L.Ed. 318 (1952). The right to contribution from the joint tort-feasor can be appropriately asserted only where the other tort-feasor has paid more than half of a third party's damages. The Juniata, 93 U.S. 337, 23 L.Ed. 930 (1876). Mr. Justice Holmes stated the principle in Erie R.R. Co. v. Erie Transp. Co., 204 U.S. 220, 226, 27 S.Ct. 246, 247, 51 L.Ed. 450 (1907):
 
 
 1
 'And it is established, as it logically follows, that the division of damages extends to what one of the parties pays to the owners of cargo on board the other. The Chattahoochee, 173 U.S. 540, 19 S.Ct. 491, 43 L.Ed. 801. The right to the division of the latter element does not stand on subrogation, but arises directly from the tort.'
 
 
 2
 The admiralty rule of contribution between joint tort-feasors has been recognized and applied by this court. The Wonder, 79 F.2d 312, 315 (2d Cir. 1935) and The Cockatoo, 61 F.2d 889 (2d Cir. 1932).
 
 
 3
 Bloomfield urges that it has incurred liability, through limitation proceedings, to cargo interests in the amount of $912,000 (the limitation fund of $680,817.04, plus interest) and having sustained damage to its vessel of $8,000, for a total of $920,000, it is entitled to receive one-half of that amount from Mowinckels. Not only is this contention untenable in the light of the decision in Halcyon Lines v. Haenn Ship Corp., supra, but is assumes without basis that the right to contribution with respect to third party payments is an integral and inseparable part of the vessel's collision damages. In Erie R.R. Co. v. Erie Transp. Co., supra, where both vessels were held to be at fault, a claim against the other shipowner for recoupment on account of payments to cargo was held to be separate and apart from the vessel's collision damages claim. Indeed, Bloomfield appears to have recognized this aspect of the case at the outset of the litigation when in its libel against Mowinckels for collision damages it made no claim for indemnity on account of liability to cargo although cargo suits were then pending against Bloomfield for damages far in excess of the alleged collision damages. We do not regard Petition of Diesel Tanker A. C. Dodge, Inc., 282 F.2d 86 (2d Cir. 1960) as support for Bloomfield's position. On the contrary, it expressly affirms the authority of much of the venerable precedent referred to here.
 
 
 4
 Under the admiralty rule of divided damages, Bloomfield was properly held entitled to recover from the Ronda one-half of the stipulated amount of $7,979.20 Bloomfield suffered in collision damages, namely, $3,989.60. The Schooner Catharine v. Dickinson, 58 U.S. (17 How.) 170, 177-178, 15 L.Ed. 233 (1854); Gilmore and Black, the Law of Admiralty 7-4 (1957).
 
 
 5
 The question of Mowinckles' right to limit is moot.
 
 
 6
 The trial court made no findings with respect to Mowinckels' entitlement to limitation and Bloomfield claims error on the part of the district court in 'failing to find Mowinckels not entitled to limit its liability.' But since Mowinckels' right to limit became moot it was entirely proper for the district court to have omitted any such findings. The only claimant in the proceeding was Bloomfield, all the cargo claimants having settled with Mowinckels prior to trial. Mowinckels' limitation fund of $98,500 was far in excess of the amount the court held to constitute Mowinckels' liability to Bloomfield, namely $3,989.60, plus interest. Under these circumstances, the question of Mowinckels' limitation did not arise.
 
 
 7
 Bloomfield attacks the ruling of the district court prior to trial holding Mowinckels' limitation petition to have been timely filed. We adopt Judge Tenney's analysis of the procedural authority supporting this conclusion. 268 F.Supp. 682, 687-688.
 
 
 8
 We find no error in the trial court's findings, based upon the stipulations of the parties, that the owner's interest in the Lucile Bloomfield for purposes of limitation amounted to $532,020.80. The limitation value was the value after collision and the district court correctly followed Norwich & N.Y. Transp. Co. v. Wright, 80 U.S. (13 Wall.) 104, 20 L.Ed. 585 (1871) in determining her limitation value to be her stipulated sound value minus the cost of collision repairs. See also, Gilmore and Black, The Law of Admiralty, 10-29 (1957); Standard Oil Co. of New Jersey v. Southern Pacific Co., 268 U.S. 146, 156, 45 S.Ct. 465, 69 L.Ed. 890 (1925); 3 Benedict, Admiralty, 501 (6th ed. 1940).
 
 
 9
 Bloomfield was correctly accorded the right to limit its liability to Ronda's cargo
 
 
 10
 The cargo claimants on this appeal claim error on the ground that the district court concluded improperly and upon insufficient evidence that the Lucile Bloomfield was 'a seaworthy vessel with a fully qualified captain and crew' and should therefore have denied limitation of liability. It is suggested also that the collision was caused and contributed to with the privity and knowledge of Bloomfield and that its petition for limitation should have been denied on this ground. We do not agree.
 
 
 11
 The record makes it abundantly clear that the collision resulted from navigational and operational faults on the part of both vessels. The lower court so found on sufficient evidence. In view of its express findings to this effect, Bloomfield was entitled to limitation, there being ample evidence that the vessel was properly manned. La Bourgogne, 210 U.S. 95, 28 S.Ct. 664, 52 L.Ed. 973 (1908); The 84-H, 296 F. 427 (2d Cir. 1923), cert. denied 264 U.S. 596, 44 S.Ct. 454, 68 L.Ed. 867; Coryell v. Phipps, 317 U.S. 406, 63 S.Ct. 291, 87 L.Ed. 363 (1943).
 
 
 12
 Despite the contention of cargo claimants to the contrary, there was sufficient evidence in the record that the Bloomfield was properly manned. The senior vice president of Bloomfield, who was in charge of operation and maintenance of the company's vessels, testified in detail and without contradiction concerning the background and qualifications of Captain William Webb of the Lucile Bloomfield. He also testified that unlicensed personnel, hired as a matter of practice through union auspices, were taken on after establishing ordinary seaman's qualifications (possession of 'an OS ticket') and passing a physical examination. The captain himself testified, as did the chief engineer. No issue was raised concerning their qualifications. Additionally, these qualifications could be inferred from their testimony.
 
 
 13
 Mistakes of judgment in the navigation of both vessels led to the collision. The record fully justifies the conclusion to this effect by the district court. In The 84-H, supra, this court stated the basic rule as follows:
 
 
 14
 'The privity or knowledge must be actual and not merely constructive. It involves a personal participation of the owner in some fault or act or negligence causing or contributing to the injury suffered. There must be some fault or negligence on his part or in which he in some way participates.'
 
 
 15
 See also, Jacobus Grauwiller Co., Inc. v. Reichert, 136 F.2d 904 (2d Cir. 1943) and The G. K. Wentworth, 67 F.2d 965 (9th Cir. 1933); 3 Benedict on Admiralty, 6th ed., pp. 393-394. And 'privity like knowledge,' the Supreme Court has remarked, 'turns on the facts of particular cases.' Coryell v. Phipps, supra 317 U.S. at p. 411, 63 S.Ct. at p. 294. Thus the vast range of factual situations presented by limitation cases makes it difficult to extract precedential value from them. See Gilmore and Black, The Law of Admiralty (1957), p. 695, et seq. In sum, the collision in question was brought about as a result of navigational errors to which Bloomfield was not privy and of which it had no knowledge.
 
 
 16
 We refrain from any discussion of Mowinckels' contention that in any event the Ronda, having been lost in the Port of Le Havre, the law of France applies, and no issue of contribution on account of Bloomfield's payment for the loss of Ronda cargo under United States law should have arisen. Under French law it is asserted that even if cargo claimants were to succeed in breaking Bloomfield's limitation, they could still recover no more than half their provable damages from Bloomfield which in turn would have no right of recourse against Mowinckels. In view of what has been said concerning the parties' rights of contribution, there can be no useful purpose served in exploring a different road to the same destination.
 
 
 17
 That interested parties here have engaged in extensive far-flung litigation is not surprising. The owners of ships moving in international trade and colliding in international waters may well expect to be involved in legal proceedings in more than one country. Forum shopping in this context is not a term of opprobrium but a way of life and each party seeks what appears to be the best legal haven. Additionally, the absence of an international concursus which can be attained only through the treaty making processes of the United States leaves the decree in a limitation proceeding clothed with domestic, not international recognition. See Gilmore and Black, The Law of Admiralty, 10-45 (1957).
 
 
 18
 Affirmed.
 
 
 
 [1]
 Of the Southern District of New York, sitting by designation