[PUBLISH]


IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 96-3494

_____

D. C. Docket No. 94-233-CIV-T-23

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT

2/18/03

THOMAS K. KAHN
CLERK

BOUCHARD TRANSPORTATION COMPANY, INC.,
for exoneration from or limitation of
liability as owner or as owner pro
hoc vice of Tug Capt. Fred Bouchard
and Barge B. No. 155, TUG CAPTAIN
FRED BOUCHARD CORPORATION, for
exoneration from or limitation of
liability as owner or as owner pro
hac vice of Tug Capt. Fred Bouchard
and Barge B. No. 155, et al.,

                                    Plaintiffs-Appellants,

                    versus

RAMONA M. UPDEGRAFF,
AMBROSE G. UPDEGRAFF, et al.,

                                    Claimants-Appellees,

BOCA CIEGA HOTEL, INC., et al.,

                                    Movants-Appellees.

_____

No. 96-3605

_____

D. C. Docket No. 93-1399-CIV-T-23A

TSACABA SHIPPING COMPANY LIMITED,
as owner of the M/V Balsa 37, Official
Number 228571, HIONG GUAN NAVEGACION CO.,
LTD., as charterer of the M/V Balsa 37,
Official Number 228571, et al.,

Plaintiffs-Appellants,

versus

ENVIRONMENTAL PROTECTION AGENCY,
State of Florida,
UNITED STATES OF AMERICA, et al.,

Claimants-Appellees,

BOCA CIEGA HOTEL, INC.,

Movant-Appellee.

_____

No. 96-3727

_____

D. C. Docket No. 94-227-CIV-T-21B

MARITRANS OPERATING PARTNERS L.P.,
for exoneration from or limitation of
liability as owner of the tug Seafarer,
official number 532672, and Barge
Ocean 255, official number 534910,
MARITRANS GENERAL PARTNER, INC.,
for exoneration from or limitation of
liability as owner of the tug Seafarer,
official number 532672, and Barge
Ocean 255, official number 534910,

Plaintiffs-Appellants,

2

                         versus

RAMONA M. UPDEGRAFF,
AMBROSE G. UPDEGRAFF, et al.,

                                    Claimants-Appellees,

BOCA CIEGA HOTEL, INC., et al.,

                                    Movants-Appellees.


                  _____

           Appeals from the United States District Court
                for the Middle District of Florida
                  _____

                       **(July 31, 1998)**

Before COX, DUBINA and BLACK, Circuit Judges.

BLACK, Circuit Judge:

    This appeal presents three issues: (1) whether the State of Florida, Department

of Environmental Protection (Florida), is entitled to Eleventh Amendment sovereign

immunity from a maritime limitation proceeding initiated pursuant to Rule F of the

Supplemental Rules for Certain Admiralty and Maritime Claims (Rule F); (2) whether

claims brought pursuant to the Oil Pollution Act of 1990, 33 U.S.C. §§ 2701-2761

(OPA 90), are subject to Rule F and therefore constrained to Rule F limitation

proceedings; and (3) whether claims brought pursuant to Florida's Pollution Discharge

                                3

Prevention and Control Act, Fla. Stat. ch. 376.011-.17, 376.19-.21 (Florida Act), are subject to Rule F and therefore constrained to Rule F limitation proceedings.

## I.  BACKGROUND

A freighter and two tugs pushing petroleum-carrying barges collided in Tampa Bay on August 10, 1993.  Within six months of the collision, the owners of the three vessels (Owners) each filed a complaint in the district court for exoneration from or limitation of liability in accordance with Rule F.

A.      Statutory Framework

Rule F evolved as a procedural device to implement the Limitation of Shipowner's Liability Act of 1851, 46 U.S.C. app. §§ 181-196 (Limitation Act).  The Limitation Act generally limits the liability of a shipowner for claims brought under general maritime law or common law to the value of the vessel and the freight then pending.[1]  46 U.S.C. app. § 183.  Rule F implements the provisions of the Limitation Act by providing a mechanism for the pro rata distribution among claimants of the fund created by the Limitation Act's liability limits.  *See Beiswenger Enters. Corp. v. Carletta*, 86 F.3d 1032, 1036 (11th Cir. 1996), *cert. denied*, __ U.S. __, 117 S. Ct. 2455 (1997).

---

[1] Congress enacted the Limitation Act to promote investment in shipbuilding.  *British Transp. Comm'n v. United States*, 354 U.S. 129, 133, 77 S. Ct. 1103, 1105 (1957).

In 1872, the Supreme Court recognized that the Limitation Act did not establish any judicial procedure by which a vessel owner could seek to enforce the Act's liability limits. *Norwich & N.Y. Transp. Co. v. Wright*, 80 U.S. (13 Wall.) 104, 123 (1871). To fill this void, the Court set forth a procedure by which vessel owners could initiate a limitation proceeding to establish a concursus of claims. *Id.* at 124-25. The Court codified this procedure by adding to the Rules of Practice for the Courts of the United States in Admiralty and Maritime Jurisdiction (Admiralty Rules). *See* Appendix to 80 U.S. (13 Wall.) (1871). Over time, the Admiralty Rules were variously amended, renumbered, and re-labeled. The present form, entitled the Supplemental Rules for Certain Admiralty and Maritime Claims (Rules A-F), was adopted in 1966.

Rule F(1) states that a "vessel owner may file a complaint in the appropriate district court . . . for limitation of liability pursuant to statute." Rule F(1) requires the vessel owner to deposit with the district court or a trustee a security in an amount tied to the "value of the owner's interest in the vessel and pending freight." After the shipowner posts security, Rule F(4) instructs the district court to "issue a notice to all persons asserting claims with respect to which the complaint seeks limitation, admonishing them to file their respective claims with the clerk of the court and to serve on the attorneys for the plaintiff a copy thereof on or before a date to be named

5

in the notice." Upon the shipowner's request, Rule F(3) directs the district court to "enjoin the further prosecution of any action or proceeding against the plaintiff or the plaintiff's property with respect to any claim subject to limitation in the action." Claimants asserting valid claims receive a pro rata distribution of "the fund deposited or secured, or the proceeds of the vessel and pending freight." Rule F(8).

OPA 90 explicitly supersedes the Limitation Act's liability limits with respect to claims for cleanup costs and damages resulting from a discharge of oil, and establishes its own schedule of liability limits for damages resulting from the oil discharge. 33 U.S.C. § 2704. The Owners allege their liability is limited under OPA 90 to $1,200 per gross ton per vessel. *See* 33 U.S.C. § 2704. OPA 90 also explicitly permits states to adopt laws imposing additional liability for oil spills above the liability limits established by OPA 90 and the Limitation Act. 33 U.S.C. § 2718. Consistent with this provision, the Florida Act imposes additional liability for oil spills.

B.    Procedural History

Each Owner's complaint initiated a limitation proceeding in the district court, in which each Owner separately sought exoneration or limitation of their respective liability. The Owners of the petroleum-carrying tank barges sought limitation of liability under the Limitation Act for claims brought pursuant to general maritime and

6

common law, and sought limitation of liability under OPA 90 and the Florida Act for claims resulting from the discharge of oil. The Owner of the freighter sought limitation of liability under the Liability Act only. Notices were issued to potential claimants that all claims against each of the Owners had to be filed in the respective limitation proceeding within 60 days or the right to recover from the Owners would be forfeited. Pursuant to Rule F(3), the district court entered injunctions staying all other proceedings against the Owners in connection with the collision, thereby requiring that claims under OPA 90 and the Florida Act be brought in the limitation proceedings. Each injunction created a concursus of all claims against the respective Owner. The district court consolidated the three limitation actions with four other cases arising out of the collision, thereby creating a single, consolidated proceeding.

The claims filed against the Owners in the limitation proceeding include the following: (1) the Owners' claims against each other under general maritime law, OPA 90, the Florida Act, and common law; (2) one tug crew's claims under general maritime law and the Jones Act for personal injuries; (3) a Coast Guard reservist's claim under general maritime law for injuries resulting from exposure to petroleum during the rescue effort; (4) the United States' claims under general maritime law, common law, and OPA 90 for cleanup costs, damage to natural resources, and response and monitoring costs, as well as subrogation claims pursuant to OPA 90; (5)

7

Florida's claims under OPA 90, the Florida Act, and general maritime law for clean-up costs, damage to natural resources, response costs, and reimbursement costs; and (6) private parties' claims, brought individually and as a purported class, under OPA 90, the Florida Act, common law, and general maritime law for damages suffered as a result of the spills.

This case has a long and complicated procedural history.[2] We are concerned here with three of the district court's rulings. First, the district court ruled that Florida is entitled to sovereign immunity from the limitation proceeding. Second, the district court dismissed without prejudice the OPA 90 claims, concluding that claims brought pursuant to OPA 90 are not subject to Rule F and therefore cannot be constrained to the limitation proceeding. Third, the district court dismissed without prejudice the Florida Act claims based on the same reasoning. The Owners appeal all three of these rulings. We reverse the district court's ruling that Florida is entitled to Eleventh Amendment immunity from the limitation proceeding, but affirm the district court's dismissal of the OPA 90 and Florida Act claims.

II.  STANDARD OF REVIEW

---

[2] This case has been before the Eleventh Circuit several times already. Most recently, this Court determined that the district court had to rule on Florida's claim of Eleventh Amendment immunity before the district court could require Florida to participate in mediation. *In re Bouchard Transp. Co. v. Florida Dept. of Envtl. Protection*, 91 F.3d 1445, 1448-49 (11th Cir. 1996).

We review de novo the district court's order dismissing Florida from the limitation proceeding on the basis of Eleventh Amendment immunity. *Seminole Tribe of Florida v. Florida*, 11 F.3d 1016, 1021 (11th Cir. 1994), *aff'd*, 517 U.S. 44, 116 S. Ct. 1114 (1996). We also review de novo the district court's order dismissing the OPA 90 and Florida Act claims based on its conclusion that Rule F is not applicable to those claims. *See DeKalb County Sch. Dist. v. Schrenko*, 109 F.3d 680, 687 (11th Cir.), *cert. denied* __ U.S. __, 118 S. Ct. 601 (1997).

## III.  DISCUSSION

A.    Whether Florida is Entitled to Eleventh Amendment Immunity from the Limitation Proceeding

Florida filed various claims in the limitation proceeding pursuant to the Florida Act, OPA 90, and general maritime law. Florida asserts that it is entitled to Eleventh Amendment immunity from the limitation proceeding and, therefore, that its claims should not be subject to the limitation proceeding. We must resolve this assertion of sovereign immunity before we may address the other issues involved in this appeal. *Seaborn v. State of Fla., Dep't of Corrections*, __ F.3d __, __ (11th Cir. 1998). No Court of Appeals has addressed this issue.[3]

---

[3] Two district courts have addressed this issue; both held that a limitation proceeding is not a suit against a state in violation of the Eleventh Amendment. *See In re Abaco Treasure Ltd.*, 1993 A.M.C. 1976, 1977 (S.D. Fla. 1993); *In re Sand Bar I, Inc.*, 1993 A.M.C. 1312, 1317 (E.D. La. 1992).

The Eleventh Amendment prevents a suit in federal court against a state by a citizen of that state or any other state. *California v. Deep Sea Research*, __ U.S. __, __, 118 S. Ct. 1464, 1470 (1998).[4] We therefore must determine whether the filing of a limitation proceeding pursuant to Rule F constitutes a suit against Florida.

In ruling on this issue, the district court did not have the benefit of the Supreme Court's opinion in *Deep Sea Research*, which addresses the application of the Eleventh Amendment in the context of an admiralty in rem proceeding. *Id.* at __, 118 S. Ct. at 1467. In *Deep Sea Research*, the Supreme Court rejected California's assertion of Eleventh Amendment immunity from an in rem admiralty action. *Id.* The Supreme Court held that the Eleventh Amendment does not bar an in rem admiralty action where the state does not have actual possession of the res:

> Based on longstanding precedent respecting the federal courts' assumption of *in rem* admiralty jurisdiction over vessels that are not in the possession of a sovereign, we conclude that the Eleventh Amendment does not bar federal jurisdiction over the *Brother Jonathan* and, therefore, that the District Court may adjudicate DSR's and the State's claims to the shipwreck.

*Id.* at __, 118 S. Ct. at 1473.

Although this admiralty limitation proceeding is not an in rem action, it is sufficiently analogous for *Deep Sea Research* to compel the conclusion that Florida

---

[4] Although the language of the Eleventh Amendment literally applies only to "any suit in law or equity," the Supreme Court has interpreted the Amendment's restrictions to include federal maritime jurisdiction. *Deep Sea Research*, __ U.S. at __, 118 S Ct. at 1471.

is not entitled to sovereign immunity. Like an in rem proceeding, the plaintiffs in the limitation proceeding neither named any specific entities as defendants in their complaints nor formally served process on any defendants.[5] Instead, the plaintiffs posted security bonds with the district court in the amount of their maximum liability and the district court notified potential claimants to make their claims on the res deposited with the district court.[6] As in *Deep Sea Research*, Florida does not have possession of the disputed res — the bonds are part of the record of this case, currently in the possession of the federal judiciary. Accordingly, we hold that Florida is not entitled to Eleventh Amendment immunity from the limitation proceeding.

B.    Whether Rule F Applies to Claims Brought Pursuant to OPA 90

Rule F does not specify the limitation statutes to which it applies. *See* Rule F(1). The Owners contend that Rule F generally applies to all limitation statutes. The Owners argue that OPA 90 is a limitation statute insofar as it limits the Owners' liability to $1,200 per gross ton for cleanup costs and natural damages, and that the

---

[5] Although Rule F(2) requires that the complaint list all law suits pending against the vessel owner, the complaint does not name the plaintiffs in those cases as defendants in the limitation proceeding. Instead, all claimants must enter the limitation proceeding on their own initiative by filing and serving a claim in accordance with Rule F(5).

[6] The Limitation Act substantively alters the claimants' common law and general maritime remedies — upon proof that the Owners are entitled to limit their liability, the Owners are effectively exonerated of in personam liability beyond the value of the vessel and pending freight. The Limitation Act therefore preempts all other general maritime and common law causes of action against the Owners outside of this limitation proceeding. Indeed, if Florida were immune from this proceeding, Florida would have no remedy at all for its general maritime and common law claims.

11

OPA 90 claims against them therefore must be resolved in a Rule F limitation proceeding.[7]  More specifically, the Owners assert that there are two sets of limited funds that must be distributed among valid claims arising from the collision: (1) a set of funds, each equal to the value of the respective vessel, to be distributed pro rata among all valid maritime and common law claims subject to the Limitation Act; and (2) a set of funds, each equal to $1,200 per gross ton for the respective vessel, to be distributed pro rata among all valid OPA 90 claims.  Therefore, the Owners contend, Rule F should apply to OPA 90 claims to the same extent it applies to claims subject to the Limitation Act.  We disagree.

OPA 90 is not subject to Rule F for two reasons:  (1) OPA 90 claimants do not face a limited fund necessitating a pro rata distribution; and (2) Congress has specifically set forth procedures to implement the strictures of OPA 90.

First, the Owners' theory is based on a false premise.  OPA 90 claimants do not face a limited fund because OPA 90 uses the Oil Spill Liability Trust Fund (Fund) to ensure that every claim made pursuant to OPA 90 will be paid in full.  26 U.S.C. § 9509; 33 U.S.C. §§ 2712, 2713.  Although OPA 90 limits the liability of the Owners for certain costs and damages arising from the oil spill in this case to $1,200 per gross

_____

[7] OPA 90 provides various liability limits, depending on the nature of the accident.  33 U.S.C. § 2704.  Although there are no facts of record in this appeal, the parties have proceeded on the assumption that $1200 per gross ton is the applicable limit for each vessel in this case.

12

ton, the Fund backstops the Owners' limited liability and ensures that every valid claim will be paid in full.[8]  Accordingly,  while OPA 90 is a limitation statute in some sense (i.e., it limits the ship owner's liability), it is not a limitation statute in the relevant sense — it does not limit the total amount of money that can be recovered by the claimants in this case.  There is no need to bring all of the claimants into a single proceeding to make a pro rata distribution because every claim will be paid in full.

Second, OPA 90 is not subject to Rule F because, whereas the Limitation Act was enacted without procedural mechanisms, Congress expressly set forth procedures for implementing OPA 90.  In reaching the same conclusion, the First Circuit summarized the claims procedures set forth in OPA 90:

> The OPA requires all claims for removal costs or damages to be presented first to the responsible party or guarantor.  If the responsible party denies liability or the claim is not settled within 90 days, the

---

[8] The Owners argue that OPA 90 does create a limited fund because the maximum amount that may be paid by the Fund with respect to any single incident is $1 billion.  *See* 26 U.S.C. § 9509(c)(2)(A)(i).  There has been no allegation that the claims in this case pose any danger of exceeding the $1 billion cap.  Even if OPA 90 were judicially analogous to the Limitation Act and therefore subject to Rule F, this Circuit does not require claimants to proceed in a Rule F limitation proceeding absent the real possibility that some claims will not be paid:

> Courts have attempted to give effect to both the Limitation Act and the saving to suitors clause whenever possible, by identifying two sets of circumstances under which the damage claimants must be allowed to try liability and damages issues in a forum of their own choosing.  The first circumstance arises where the limitation fund exceeds the aggregate amount of all the possible claims against the vessel owner.  In such a case, the vessel owner is not exposed to liability in excess of the limitation fund, and thus the vessel owner's rights under the Limitation Act are not implicated.

*Beiswenger*, 86 F.3d at 1037 (citations omitted).

13

> claimant may proceed against the responsible party in court or present the claim to the Fund. In some enumerated instances, claims may be presented directly to the Fund without first presenting them to the responsible party. The purpose of the claim presentation procedure is to promote settlement and avoid litigation.

*MetLife Capital Corp. v. M/V Emily S.*, 132 F.3d 818, 824 (1st Cir. 1997) (internal citations and quotations omitted), *cert. denied*, __ U.S. __, __ S. Ct. __, no. 97-1610, (June 26, 1998). Unlike the Limitations Act, OPA 90 can accomplish its statutory goals without the assistance of Rule F.

This conclusion is supported by principles of statutory construction. Comparing the OPA 90 statutory procedures with the Rule F procedures reveals two largely conflicting frameworks for resolving OPA 90 claims. For example, OPA 90 gives claimants three years to bring claims against a responsible party. 33 U.S.C. § 2717(f). OPA 90 also requires that claimants first present their claims to the responsible party, and then, if a claim is not settled within the requisite period of time, the claimant may proceed in court. 33 U.S.C. § 2713(a), (c). In some instances, claimants may proceed directly to the OPA Fund and then subrogate to the United States the claims against the responsible party. 33 U.S.C. § 2715. If OPA 90 claims were subject to Rule F, every claim (including claims subrogated to the United States) would have to be brought within the period announced by the district court in the notice sent to potential claimants, which was 60 days in this case. Subjecting OPA

14

90 claims to Rule F effectively would allow ship owners to opt out of the Congressionally mandated procedures for resolving OPA 90 claims. Additionally, the venue provisions of OPA 90 permit claimants to proceed "in any district in which the discharge or injury or damages occurred, or in which the defendant resides, may be found, has its principal office, or has appointed an agent for service of process." 33 U.S.C. § 2717(b). The injunction issued by the district court in a Rule F proceeding would require OPA 90 claimants to proceed only in the district court chosen by the vessel owners, and the process envisioned by OPA 90's jurisdiction and venue provisions would be rendered meaningless. Similarly, OPA 90 grants jurisdiction to state courts to hear claims arising thereunder. 33 U.S.C. § 2717(c). This grant of concurrent jurisdiction would be rendered meaningless if OPA 90 claims were subject to Rule F because Rule F complaints must be filed in federal court. *MetLife*, 132 F.2d at 822.[9]

In resolving the conflict between the Rule F procedures and the OPA 90 procedures, a fundamental principle of statutory construction requires that we apply

---

[9] The Owners assert that this conflict of procedures is no different than the conflict that occurs when Jones Act claims are required to be brought in a Rule F limitation proceeding (e.g., the 3-year statute of limitations normally enjoyed by Jones Act claimants is replaced with the shorter period announced pursuant to Rule F). While it is true that Rule F procedures govern in the small percentage of Jones Act cases that implicate the liability limits of the Limitation Act, the Owners' theory would subject every OPA 90 claim to Rule F, giving ship owners the option to replace OPA 90's 3-year statutory period in every case.

15

the more specific procedures.[10] *San Pedro v. United States*, 79 F.3d 1065, 1069 (11th Cir.) ("We therefore follow the principle, upheld by the Supreme Court on numerous occasions, that a specific statute takes precedence over a more general one."), *cert. denied*, __ U.S. __, 117 S. Ct. 431 (1996). Furthermore, we avoid statutory constructions that render provisions meaningless. *Woodfork v. Marine Cooks & Stewards Union*, 642 F.2d 966, 970-71 (5th Cir. Apr. 1981)[11] ("A basic principle of statutory construction is that a statute should not be construed in such a way as to render certain provisions superfluous or insignificant." (internal quotations and citations omitted)). Consistent with these principles of statutory construction, OPA 90 claims must be resolved pursuant to the procedures contained in that statute, rather than replacing those procedures with Rule F.

The Owners argue that Rule F must be applied to preserve judicial resources and avoid the burden of defending a multiplicity of suits in various fora. The Owners' understandable interest in consolidating this potentially unwieldy litigation does not overcome the Congressionally mandated procedures for adjudicating OPA

---

[10] Although the Supplemental Rules for Certain Admiralty and Maritime Claims are not part of a Congressionally-enacted statute, the decision whether to apply those rules or the more specific procedures contained in OPA 90 is informed by general principles of statutory construction.

[11] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981.

90 claims. This Circuit does not view the convenience of the shipowner as a legitimate goal of a Rule F limitation proceeding:

> Absent an insufficient fund (1) the statutory privilege of limiting liability is not in the nature of a *forum non conveniens* doctrine, and (2) the statute gives a ship-owner, sued in several suits no advantage over other kinds of defendants in the same position. Concourse is to be granted only when necessary in order to distribute an inadequate fund. The purpose of limitation proceedings is not to prevent a multiplicity of suits but, in an equitable fashion, to provide a marshalling of assets — the distribution pro rata of an inadequate fund among claimants, none of whom can be paid in full.

*Pershing Auto Rentals, Inc. v. Gaffney*, 279 F.2d 546, 550-51 (5th Cir. 1960) (internal citations and quotations omitted). Furthermore, neither Rule F not the Limitation Act grants the Owners a right to a concursus. Rule F merely provides a procedure for distributing a limited fund among competing claimants where the real possibility exists that some claims will not be paid in full:

> [W]here the value of the vessel and the pending freight, the fund paid into the proceeding by the offending owner, exceeds the claims made against it, there is no necessity for the maintenance of the concourse. . . .

> For us to expand the jurisdictional provisions of the Act to prevent respondent from now proceeding in her state case would transform the Act from a protective instrument to an offensive weapon by which the shipowner could deprive suitors of their common-law rights, even where the limitation fund is known to be more than adequate to satisfy all demands upon it. The shipowner's right to limit liability is not so boundless. The Act is not one of immunity from liability but of limitation of it and we read no other privilege for the shipowner into its language over and above that granting him limited liability.

*Lake Tankers Corp. v. Henn*, 354 U.S. 147, 152-53, 77 S. Ct. 1269, 1272 (1957).[12]

Rule F is designed to distribute a limited fund to multiple claimants where Congress has provided no statutory procedure for that distribution and where all claims cannot be paid in full. This case satisfies neither of these requirements — Congress has provided a procedure for implementing OPA 90 and the Fund will guarantee full payment of all valid OPA 90 claims arising from this oil discharge.

C.      Whether Rule F Applies to Claims Brought Pursuant to the Florida Act

OPA 90 authorizes states to adopt liability laws for oil spills and exempts those laws from the provisions of the Liability Act. 33 U.S.C. § 2718. Accordingly, the Florida Act is neither subject to the Limitation Act's provisions nor otherwise preempted. We will not impose Rule F on the Florida Act because, like OPA 90 claimants, Florida Act claimants do not face a limited fund. The Florida Act establishes the Florida Coastal Protection Trust Fund (Florida Fund) to ensure that all claims are paid in full despite the limitation of liability enjoyed by responsible parties. Fla. Ch. 376.11. Moreover, as discussed in the previous section of this opinion, the Owners do not have a general entitlement to a concursus; Rule F is not designed to make litigation more convenient for vessel owners.

---

[12] The Owners argue that the affirmative defense of limited liability will not work if multiple actions proceed in different courts. We disagree. OPA 90 establishes a limit of liability for the Owners. After paying out that amount, no cause of action will lie against the Owners pursuant to OPA 90. The remaining claims (or the remaining portions of claims) will be paid from the Fund.

Furthermore, the Florida Act sets forth an elaborate set of claims procedures to guide the administration of claims against responsible parties and against the Florida Fund. Fla. Stat. ch. 376.123. Rule F was designed to correct a procedural void in a federal law. Florida has left no such void in its liability scheme.

## IV. CONCLUSION

In light of *Deep Sea Research*, the district court erred in ruling that Florida is entitled to Eleventh Amendment immunity from the limitation proceeding. The district court correctly dismissed without prejudice the claims brought against the Owners under OPA 90 and the Florida Act.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.