In the Matter of the Complaint of J.E. BRENNEMAN CO., INC., Bare Boat Charterer of the Crane Barge ATLAS, for Exoneration from or Limitation of Liability

and

In the Matter of the Complaint of Commerce Construction Corp., Inc. as an alleged successor to J.E. Brenneman Co., Inc., Bare Boat Charterer of the Crane Barge ATLAS, for Exoneration from or Limitation of Liability

No. CIV.A.01–1442.

United States District Court, E.D. Pennsylvania.

June 26, 2003.

As Amended July 7, 2003.

Edward V. Cattell, Hollstein, Keating, Cattell, et al., Matthew H. James, Holstein Keating Cattel Johnson & Goldstein PC, Philadelphia, PA, for in the Matter of the Complaint of J.E. Brenneman Co., Inc., Bare Boat Charterer of the Crane Barge Atlas, for Exoneration from or Limitation of Liability.

Patricia M. Henrich, Reilly Janiczek and McDevitt P.C., Philadelphia, PA, for in the Matter of the Complaint of Commerce Construction Corporation, Inc., as an Alleged Successor to J.E. Brenneman Co., Inc., Bare Boat Charter of the Crane Barge Atlas, for Exoneration from or Limitation of Liability.

### MEMORANDUM

YOHN, District Judge.

Plaintiff, J.E. Brenneman Co., Inc., brought this admiralty action pursuant to the Shipowners' Limitation of Liability Act ("Limitation Act") to limit or exonerate any of its possible liability arising from the May 2000 collapse of Pier 34 in Philadel-

phia. On June 29, 2001, this court stayed all state court proceedings against plaintiff in accordance with the terms of the Act. Currently before this court is plaintiff's motion to further stay all state court proceedings in which claims arising out of the pier's collapse are being litigated by and against all parties other than plaintiff. Because neither the Limitation Act nor the Anti–Injunction Act empowers this court to stay these proceedings, plaintiff's motion was denied.

### Facts

Plaintiff, J.E. Brenneman Co., Inc. ("Brenneman"), is a "marine construction company." Pl. Mot. at 1. Sometime prior to 1994, HMS Ventures, Inc. ("HMS") and Portside Investors, L.P. ("Portside") entities which respectively leased and owned Pier 34 in Philadelphia, hired Brenneman pursuant to a "marine construction contract" to perform necessary repair work on the pier. Brenneman performed this work in 1994, 1995 and 1996 with the use of a crane barge named the "ATLAS." Pl. Mot. at 1–2; Compl. ¶¶ 4, 8, & 12. Since 1996, however, Brenneman has not done any work on the pier, and in 1998, it ceased active business operations. *Id.* at 2.

On May 18, 2000, Pier 34, which housed a restaurant and night club, collapsed, claiming the lives of three individuals and injuring thirty-five others. Pl. Br. at 1. As a result of the collapse, the victims of this tragedy brought multiple personal injury and wrongful death suits in the Philadel-phia County Court of Common Pleas against HMS and Portside, both of which, in turn, brought suit against Brenneman for negligence and breach of contract, and against Brenneman and others for contribution and indemnity. Pl. Mot. at 2. Subsequently, Brenneman was also joined as a defendant in the personal injury and wrongful death suits, in which the various defendants filed cross claims against each other for contribution and indemnification. *Id.*

On March 27, 2001, facing potential damages in the multi-million dollar range, Brenneman filed the current action in this court pursuant to the Limitation Act, which allows shipowners in certain situations to limit their liability for maritime accidents to the value of their vessel and their freight then pending. 46 U.S.C. § 181 et seq. (WEST 2003). That value is placed in a fund from which claimants are paid pro rata. As required by the Limitation Act, this court stayed all state court proceedings against Brenneman until the limitation case was concluded. Order (Yohn, J., June 29, 2001) (Doc. # 44 & 45). Soon thereafter, pursuant to the statutorily-required procedure, the parties who had claims against Brenneman filed those claims in this action.[1] Additionally, Brenneman and several of the claimants brought cross-claims, third-party claims, or both, seeking contribution and indemnification from one another, or asserting tort and contract claims against Brenneman or other parties.[2]

---

1. In limitation proceedings, the "defendants" are dubbed "claimants," as they are those individuals who allege to have been injured by plaintiff and, hence, have claims against it.

2. *See* 1) Samuel T. Hudson, A.D. Stoner, S.T. Hudson Engineers, Inc., and Hudson Construction Consultants, Inc. v. Michael Asbell, M.J. Asbell, Inc., Asbell & Assoc., L.P., Portside Investors, L.P., Pier 34 Restaurant, L.P. (a.k.a. Pier 34 Assoc., Inc., Pier 34 Restau-rant, Inc.), Riverside Entertainment Corp., Heat Night Club, Eli Karetny, HMS Ventures, Inc., and Personal Injury Claimants (Doc. # 10) (raising negligence claims); 2) Commerce Construction Corp., Inc. and Jesse E. Tyson v. Michael Asbell, M.J. Asbell, Inc., Asbell & Assoc., L.P., Portside Investors, L.P., Pier 34 Restaurant, L.P. (a.k.a. Pier 34 Assoc., Inc., Pier 34 Restaurant, Inc.), Riverside Entertainment Corp., Heat Night Club, Moshulu Restaurant, Eli Karetny, Dorrance Hamilton,

Because the cross-claims and third-party claims are strikingly similar to those being pursued in state court, Brenneman fears that duplicative litigation is likely, if not inevitable, and that the risk of conflicting court decisions is high. Pl. Br. at 5. Moreover, Brenneman asserts that, despite this court's stay, state court claims are nonetheless being filed against it on a regular basis. Pl. Br. at 4. By having to defend against these pleadings, Brenneman claims to be prejudiced. *Id.* As a result of these fears and concerns, Brenneman now moves to extend the stay against state actions against Brenneman to encompass those state court proceedings against and among all other named defendants in cases seeking remedies from the Pier 34 collapse.

## Discussion

Because this motion would require the court to stay pending state court proceedings, I must look to the Anti–Injunction Act ("AIA") for guidance. The AIA permits a federal court to stay state court proceedings only "as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. As the Supreme Court has stated, the Anti–Injunction Act "is not a statute conveying a broad general policy for appropriate ad hoc application. Legislative policy is here expressed in a clear cut prohibition qualified only by specifically defined exceptions." *Atlantic Coast Line Railroad Co. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 287, 90 S.Ct.

HMS Ventures, Inc., Ascott Investment Corp., and Personal Injury Claimants (Doc # 14) (same); 3) Suburban Propane, L.P. v. Michael Asbell, M.J. Asbell, Inc., Asbell & Assoc., L.P., Portside Investors, L.P., Pier 34 Restaurant, L.P. (a.k.a. Pier 34 Assoc., Inc., Pier 34 Restaurant, Inc.), Riverside Entertainment Corp., Heat Night Club, Moshulu Restaurant, Eli Karetny, Dorrance Hamilton, HMS Ventures, Inc., Ascott Investment Corp., Samuel T. Hudson, A.J. Stoner, S.T. Hudson Engineers, Inc., Hudson Construction Consultants, Inc., Commerce Construction Corp., Inc., Jesse E. Tyson and Personal Injury Claimants (Doc. # 71) (seeking indemnification based on tort and contract, and contribution based on tort); 4) Portside Investors, L.P., Michael Asbell, M.J. Asbell Inc., Asbell & Assoc, L.P. and Ascott Investment Corp. v. Samuel T. Hudson, A.J. Stoner, S.T. Hudson Engineers, Inc., Hudson Construction Consultants, Inc., Hudson Maritime Services, LLC, EMC/Hudson Maritime Services, LLC, Waterfront Corp., Commerce Construction Corp., Inc., Jesse E. Tyson, J.E. Brenneman Co., Inc., and Personal Injury Claimants (Doc. # 87) (raising breach of contract, breach of express and implied warranties, negligence, and fraudulent misrepresentation claims); 5) J.E. Brenneman, Co., Inc. v. G.K. Management, Inc., Eagle Restaurant Assoc., Inc., Robert Rosen Assoc., Grimaldi Contractors, Site Engineers, Inc., Matty Bros. Construction, LLC, Tambur-

ri Assoc., Inc., City of Philadelphia, and City of Philadelphia Dept. of Licenses and Inspections (Doc. # 122) (seeking contribution and indemnification); 6) HMS Ventures, Inc., Eli Karetny, Pier 34 Restaurant, L.P. (a.k.a. Pier 34 Assoc., Inc., Pier 34 Restaurant, Inc.), Heat Night Club, Moshulu Restaurant, and Dorrance Hamilton v. Samuel T. Hudson, A.J. Stoner, S.T. Hudson Engineers, Inc., Hudson Construction Consultants, Inc., Hudson Maritime Services, LLC, EMC/Hudson Maritime Services, LLC, Waterfront Corp., Commerce Construction Corp., Inc., Jesse E. Tyson, J.E. Brenneman Co., Inc., Portside Investors, L.P., Michael Asbell, M.J. Asbell Inc., Asbell & Assoc, L.P., Ascott Investment Corp., Riverside Entertainment Corp., and Suburban Propane, L.P.(Doc. # 126) (seeking contribution and indemnification); 7) J.E. Brenneman, Co., Inc. v. Samuel T. Hudson, A.J. Stoner, S.T. Hudson Engineers, Inc., Hudson Construction Consultants, Inc., Hudson Maritime Services, LLC, Waterfront Corp., Commerce Construction Corp., Inc., Jesse E. Tyson, Portside Investors, L.P., Michael Asbell, M.J. Asbell Inc., Asbell & Assoc, L.P., Ascott Investment Corp., HMS Ventures, Inc., Eli Karetny, Pier 34 Restaurant, L.P. (a.k.a. Pier 34 Assoc., Inc., Pier 34 Restaurant, Inc.), Riverside Entertainment Corp, Heat Night Club, Moshulu Restaurant, Dorrance Hamilton, and Suburban Propane, L.P. (Doc. # 149) (seeking contribution and indemnification).

1739, 26 L.Ed.2d 234 (1970) (citing *Amalgamated Clothing Workers v. Richman Bros.*, 348 U.S. 511, 515–16, 75 S.Ct. 452, 99 L.Ed. 600 (1955)). Furthermore, because its "prohibition against such injunctions in part rests on the fundamental constitutional independence of the States and their courts, the exceptions should not be enlarged by loose statutory construction." *Id.; see also In re Prudential Ins. Co. of America Sales Practices Litigation*, 314 F.3d 99, 103 (3d Cir.2002) (quoting *In re Diet Drugs*, 282 F.3d 220, 233 (3d Cir. 2002) for the proposition that "[t]he exceptions in the Anti Injunction Act are to be construed narrowly"). Indeed, our Court of Appeals has held that " '[a]ny doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy.' " *Id.* at 103–04 (quoting *Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 297, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970)).

Plaintiff in the instant case, making only passing reference to the AIA, argues that the Limitation Act demands the stay of court proceedings against a shipowner's alleged joint tort-feasors. Specifically, it argues that the Limitation Act and binding precedent interpreting the statute require limitation courts to exercise jurisdiction over "all claims asserted by and between all parties," thereby marshaling these claims "into a single forum for prompt, efficient and equitable distribution, and all assets for the equitable apportionment between successful claimants." Pl. Br. at 7.

Because neither the plain statutory terms of the Limitation Act nor the case law interpreting the Act imposes such a broad-sweeping requirement on this court, plaintiff's motion was denied.[3]

■ The unambiguous language of the Limitation Act makes plain that the statute only applies to shipowners. Although this question appears to be one of first impression in this circuit, our Court of Appeals has established rules which this court must follow when engaging in statutory interpretation. When so doing, this court must "begin with the language of the statute itself." *In re United Healthcare System, Inc.*, 200 F.3d 170, 176 (3d Cir. 1999). The Third Circuit has held that "[i]f the language of the statute expresses Congress's intent with sufficient precision, the inquiry ends there and the statute is enforced according to its terms." *U.S. v. Gregg*, 226 F.3d 253, 257 (3d Cir.2000) (citing *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290). Thus, "[o]nce the plain meaning of the statute is determined, it is conclusive 'except in rare cases in which the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.' " *Id.* (citing *New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc.*, 101 F.3d 1492, 1498 (3d Cir.1996) and quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982)).

The Limitation Act states that

[t]he liability of the owner of any vessel, ... for any loss, damage, or injury by

---

3. As plaintiff correctly notes, the Supreme Court has held that, because the Limitation Act supercedes the AIA, stays preventing the litigation of claims against *shipowners* do qualify as exceptions to the AIA. *Providence v. Hill*, 109 U.S. 578, 3 S.Ct. 379, 27 L.Ed. 1038 (1883); *Mitchum v. Foster*, 407 U.S. 225, 234–35 n. 13, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972). Plaintiff in the instant case, however, asks this court to stay proceedings against parties who do not qualify as owners under the Limitation Act. Thus, this court must first determine if the Limitation Act authorizes staying all of the state court proceedings against these parties. If it does, then the first AIA requirement would be satisfied. If it does not, the AIA would prohibit this court from issuing the injunction.

collision, or for any act, matter, or thing, loss, damage, or forfeiture, done, occasioned, or incurred, without the privity or knowledge of such owner or owners, shall not . . . exceed the amount or value of the interest of such owner in such vessel, and her freight then pending.

46 App.U.S.C.A. § 183(a) (WEST 2003); *see also Zapata Haynie Corp. v. Arthur,* 926 F.2d 484, 485 (5th Cir.1991)(emphasis added) (citing 46 App.U.S.C.A. § 183 for the proposition that "a *shipowner's* liability for any damage arising from a disaster at sea occasioned without the privity or knowledge of the *shipowner* shall be limited to the value of the vessel and its freight."). Pursuant to the statute and the rules promulgated thereunder, once a shipowner has filed his federal limitation action in compliance with the law, "all claims and proceedings against the *owner* or the *owner's* property with respect to the matter in question shall cease." 28 U.S.C. Rule F(3) (Supplemental Rules for Certain Admiralty and Maritime Claims)(emphasis added).[4] The only mention in the statute of any party other than a shipowner, charterer, or vessel appears in § 187, which states that none of the law's preceding sections

> shall be construed to take away or affect the remedy to which any party may be entitled, against the master officers, or seamen, . . . on account of any negligence, fraud, or other malversation of such master officers, or seamen respectively, nor to lessen or take away any responsibility to which any master or seaman of any vessel may by law be liable, notwithstanding such master or seaman may be an owner or part owner of the vessel.

As the Fifth Circuit has noted, this section "further emphasize[s] that the benefits [of the statute] apply to owners only." *Zapata,* 926 F.2d at 485. Indeed, Justice Clark, providing the fifth crucial vote in *Maryland Casualty Co. v. Cushing,* 347 U.S. 409, 74 S.Ct. 608, 98 L.Ed. 806 (1954)(plurality), noted that, pursuant to the Limitation Act and the Admiralty Rules, "the limitation court is empowered to enjoin suits in other courts arising out of the accident only if the suits are against the owner, charterer, or vessel; no mention was made of enjoining suit against any other party . . . ." *Id.* at 426, 74 S.Ct. 608 (Clark, J., concurring). Thus, the plain language of the Limitation Act does not require or specifically permit this court to extend the current stay to other parties to the litigation.

Plaintiff, however, argues that, consistent with congressional intent, the Supreme Court has interpreted the statute to require the stay it seeks. None of the cases that plaintiff cites in support of its argument, however, stands for such a broad-sweeping proposition. While each case reflects the Court's desire to protect shipowners' federal limitation rights, each also makes clear that how those rights are protected is a matter for the district court's discretion. Thus, in *Langnes v. Green,* 282 U.S. 531, 51 S.Ct. 243, 75 L.Ed. 520 (1931), the Court, addressing whether a district court must in all cases stay state court proceedings against a shipowner who has sought limitation, held that, a state court "was competent to entertain a claim of the shipowner for a limitation of liability and afford him appropriate relief under the statute dealing with that subject." *Id.*

---

**4.** This statute also includes charterers with the concept of shipowners. Pursuant to 46 App.U.S.C. § 186, "[t]he charterer of any vessel, in case he shall man, victual, and navigate such vessel at his own expense, or by his own procurement, shall be deemed the owner of such vessel within the meaning of the provisions of this chapter relating to the limitation of the liability of the owners of vessels . . . ."

at 540, 51 S.Ct. 243. Even after the ship-owner invoked the jurisdiction of the federal court, the decision of the federal court to exercise its jurisdiction to dispose of the cause was one of discretion. *Id.* The Court defined discretion as that "exercised not arbitrarily or willfully, but with regard to what is right and equitable under the circumstances and the law, and directed by the reason and conscience of the judge to a just result." *Id.* at 541, 51 S.Ct. 243. The Court then held that the district court abused its discretion by not dissolving the injunction, retaining the petition for limitation, if needed, and allowing the state court actions to proceed.[5] Moreover, the Court recognized that, in exercising that discretion, " 'if ... petitioner's object in invoking the jurisdiction of this court is to escape a jury trial and take the case away from the common-law jurisdiction, that purpose should receive no countenance ....' " *Id.* at 543, 51 S.Ct. 243 (quoting *The Lotta,* 150 F. 219, 222–223 (D.S.C. 1907)).

Justice O'Connor echoed this discretionary language over half a century later in *Grubart v. Great Lakes Dredge & Dock Co.,* 513 U.S. 527, 115 S.Ct. 1043, 130 L.Ed.2d 1024 (1995). In that case, the Court examined whether a district court had jurisdiction over claims arising from the flooding of a tunnel and, ultimately, office buildings in downtown Chicago. The alleged cause of the flooding was faulty repair work provided to a pier via barge. While the Court's primary concern was determining whether the case fell within the scope of federal admiralty jurisdiction, Justice O'Connor writing separately and providing the final necessary fifth vote, stated that she did "not ... understand the Court's opinion to suggest that, having found admiralty jurisdiction over a particular claim against a particular party, a court must then exercise admiralty jurisdiction over all the claims and parties involved in the case. Rather the court should engage in the usual supplemental jurisdiction and impleader inquiries." *Id.* at 548, 115 S.Ct. 1043 (O'Connor, J., concurring) (citing 28 U.S.C. § 1367 and Fed.R. Civ.P. 14).

The discretionary language of both these opinions appeared most recently in *Lewis v. Lewis & Clark Marine, Inc.,* 531 U.S. 438, 121 S.Ct. 993, 148 L.Ed.2d 931 (2001), in which Justice O'Connor, writing this time for a unanimous Court, addressed how to best protect both the rights guaranteed to shipowners pursuant to the Limitation Act as well as those guaranteed to claimants under the Savings to Suitors Clause. The Court first examined the Savings to Suitors Clause, which is contained in 28 U.S.C.A. § 1333 [6] and "save[s] to suitors in all cases all other remedies to which they are otherwise entitled" despite the district courts's original jurisdiction over admiralty and maritime cases. The Court noted that Congress likely inserted the clause " 'from an abundant caution, lest the exclusive terms in which the power is conferred on the District Courts might be deemed to have taken away the concurrent remedy which had before existed. This

---

5. The Court specifically held that a state court would be so competent where there is only one possible claimant in both actions and the district court retains, "as a matter of precaution, the petition for a limitation of liability to be dealt with in the possible but (since it must be assumed that respondent's motion was not an idle gesture but was made with full appreciation of the state court's entire lack of admiralty jurisdiction) the unlikely event that the right of petitioner to a limited liability might be brought into question in the state court, or the case otherwise assume such form in that court as to bring it within the exclusive power of a court of admiralty." *Langnes,* 282 U.S. at 541–42, 51 S.Ct. 243.

6. 28 U.S.C. § 1333 governs this court's admiralty jurisdiction and originally appeared in the Judiciary Act of 1789.

leaves the concurrent power where it stood at common law.'" *Id.* at 444, 121 S.Ct. 993 (quoting *New Jersey Steam Nav. Co. v. Merchants' Bank of Boston,* 47 U.S. 344, 6 How. 344, 390, 12 L.Ed. 465 (1848)). Thus, the Court held that the clause "preserves remedies and the concurrent jurisdiction of state courts over some admiralty and maritime claims." *Id.* at 445, 121 S.Ct. 993.

Turning to its examination of the Limitation Act, the Court noted that a district court's decision as to whether to stay state court proceedings pending the outcome of a limitation proceeding is "'one of discretion in every case.'" *Id.* at 449, 121 S.Ct. 993 (quoting *Langnes v. Green,* 282 U.S. 531, 544, 51 S.Ct. 243, 75 L.Ed. 520 (1931)). The Court recognized that "to expand the scope of exclusive jurisdiction to prevent ... state court actions 'would transform the Act from a protective instrument to an offensive weapon by which the shipowner could deprive suitors of their common-law rights .... The shipowner's right to limit liability is not so boundless.'" *Id.* at 450–52, 121 S.Ct. 993 (quoting *Lake Tankers Corp. v. Henn,* 354 U.S. 147, 152–53, 77 S.Ct. 1269, 1 L.Ed.2d 1246 (1957)). The Court held that a district court in a limitation action does not abuse its discretion by allowing state actions to proceed against the owner, provided that the owner's right to limitation is protected. The Court recognized two circumstances in which an owner's rights are so protected: "[1] where there is only a single claimant ... or [2] where the total claims do not exceed the value of the limitation fund." *Id.* at 451, 121 S.Ct. 993.

Although these cases discuss the discretion of district courts to chose whether to stay state court proceedings against a shipowner, it is axiomatic that if state actions may proceed against shipowners in state court despite the Limitation Act's mandatory language prohibiting such ac-

tion, state court suits against individuals and entities who are not shipowners would be similarly permissible. Moreover, although the instant case does not fall within either of the two exceptions recognized by the Court in *Lewis,* because the existing stay sufficiently protects plaintiff's right to limitation, and that right is not compromised by state court actions against its alleged joint tort-feasors, the reasoning of *Lewis* nonetheless informs the conclusion that plaintiff's requested expansion of the current stay is beyond the scope of the Limitation Act.

Plaintiff, however, argues to the contrary that its right to limitation will be diminished if not eviscerated should the personal injury plaintiffs succeed in their state court lawsuits against plaintiff's alleged tort-feasors. It avers such success would deplete the fund of money from which it would pay the limitation claimants should this court decide that plaintiff is entitled to limitation. In such circumstances, plaintiff argues that the court must stay the state court proceedings in order to protect plaintiff's financial resources so that it can pay those damages that might be ordered by this Court. In support of this proposition, plaintiff relies upon *Maryland Casualty, Co. v. Cushing,* 347 U.S. 409, 74 S.Ct. 608, 98 L.Ed. 806 (1954)(plurality), in which the Court held that a state suit against a shipowner's insurer, brought pursuant to a provision of the Louisiana Insurance Code allowing direct actions against an insurer within the terms and limits of its policy with a shipowner, may only proceed following the federal limitation court's determination of the shipowner's liability.

The Court reasoned that allowing these suits to proceed would negate the benefit of maritime insurance, which is a necessary component of the maritime industry.[7] The Court feared that non-limitation suits

---

7. *Maryland Casualty,* 347 U.S. at 417, 74 S.Ct. 608. While the Court in *Maryland Ca-*

would devour the insurance that covered a ship, thereby forcing the shipowner to sell his vessel in order to satisfy the limitation court's judgment. As a result, shipowners would be compelled to "become self-insurers for liability risks in order to be sure of getting the full protection of the limitation legislation" as " '[n]o form of agreement could be framed by which (shipowners) could protect themselves.' " *Id.* at 419–20, 74 S.Ct. 608 (citing *Place v. Norwich & N Y Transp Co.*, 118 U.S. 468, 505, 6 S.Ct. 1150, 30 L.Ed. 134 (1886)). Without the ability to protect their investments, the Court reasoned that most shipowners would abandon the industry, and maritime entrepreneurs would invest in other, more secure ventures. *Id.* at 419, 74 S.Ct. 608. This result would run counter to the Act's primary purpose: to encourage the American shipping industry by "provid[ing] assistance to American shipowners and thereby plac[ing] them in a favorable position in the competition for world trade." *Id.* at 413–14, 415, 74 S.Ct. 608. Additionally, the Court viewed the direct action claims as being analogous to those against the shipowner·because the insurers' liability was predicated entirely on the liability of the shipowners.[8]

Thus, the *Cushing* opinion stands for the proposition that the Limitation Act provides shipowners with the most basic financial protection necessary to encourage shipping and keep the shipping industry afloat.[9] Basically, the decision dealt with the shipowner's insurance company as an alter ego for the shipowner, which is quite different from the situation presented in the instant case. Here, plaintiff does not allege that should the state court defendants lose in the on-going state court cases, it would have no insurance with which to cover its losses and as a result be forced to sell its vessel. Its right to limitation is not frustrated in a way comparable to the petitioner's rights in *Cushing*. Similarly, the *ex post* actions of plaintiff's alleged joint tort-feasors have no bearing on plaintiff's ability *ex ante* to secure insurance prior to commencing its work on the pier. In sum, the outcome of the pending state court litigation against plaintiff's alleged joint tort-feasors has little bearing on plaintiff's ability to insure itself from the costs of engaging in the shipping business. Thus, based solely on the facts of the instant case, plaintiff is asking the court to buoy its financial situation well beyond

sualty was concerned that direct action suits against insurers would diminish the indemnity available to shipowners, it also recognized the long-standing principle that such insurance has never been held to be part of the concursus. *Id.* at 419, 74 S.Ct. 608 (citing for this proposition *The City of Norwich*, 118 U.S. 468, 493–97, 6 S.Ct. 1150, 30 L.Ed. 134 (1886)).

8.  As the Court stated, the policies pursuant to which the state court plaintiffs were bringing suit "by their terms preclude[d] payment to anyone until the insured shall have been held liable to pay damages." *Maryland Casualty*, 347 U.S. at 411 n. 3, 74 S.Ct. 608.

9.  Although *Cushing* was a plurality opinion, this court's discussion of the decision encompasses both the plurality and Justice Clark's

concurrence. The Justices were in agreement about the purpose of the Limitation Act and the adverse impact that direct action suits could have on limitation proceedings. Justice Clark parted ways with his brethren only with reference to whether the direct action statute should be invalidated as unconstitutionally encroaching on federal admiralty jurisdiction. Whereas the plurality maintained that Louisiana's statute was not valid, Justice Clark took the perspective that, because the Limitation Act did not clearly apply to suits against parties other than shipowners, charterers, or vessels, it would not be proper to invalidate Louisiana's law. *See Cushing*, 347 U.S. at 426, 74 S.Ct. 608 (Clark, J., concurring) ("When the issue is so close, I would resolve it in favor of upholding rather than invalidating a state statute.").

that to which the *Cushing* Court held it would be entitled. Moreover, the legal landscape of admiralty law has changed since the *Cushing* decision. Even if the court assumes, *arguendo*, that the *Cushing* decision authorizes this court to grant plaintiff's motion, the Court's holding in *Lewis* would nonetheless still apply. Therefore, the decision of whether or not to issue the stay would remain discretionary provided that the court could protect plaintiff's federal right to limitation. For these reasons, I do not read *Cushing* as requiring the requested stay.[10]

Finally, although these cases stand for the proposition that I have the discretion to grant plaintiff's motion, for the following reasons, I am not persuaded to exercise that discretion at this time. First, exercising my jurisdiction now offers neither immediate benefit nor harm to plaintiff. Plaintiff is primary concerned about the liability phase of the federal and state litigation. However, because discovery is likely to continue for some time and is proceeding in state court in the same manner as it would proceed in this court, plaintiff's fears should be abated.[11] In contrast,

---

**10.** In further support of its argument, plaintiff cites three other cases that are readily distinguishable from the instant action.

First, in *British Transport Commission v. United States*, 354 U.S. 129, 77 S.Ct. 1103, 1 L.Ed.2d 1234 (1957), the Court addressed whether the Limitation Act prohibited district courts from hearing cross-claims while deciding the merits of a limitation action. Specifically, the claimants in the federal action, who had failed to file state court suits, wished to bring their pendant claims in the federal limitation proceedings. *Id.* at 130–32, 77 S.Ct. 1103. The Court held that district courts "have the power to adjudicate all of the demands made and arising out of the same disaster." *Id.* at 138, 77 S.Ct. 1103. In the instant case, however, the issue is not whether I have the authority to hear all of the claims, but rather whether I am required to so do.

Second, in *Metropolitan Redwood Lumber Co. v. Doe*, 223 U.S. 365, 32 S.Ct. 275, 56 L.Ed. 473 (1912), the Court examined whether limitation litigation in federal court and state court litigation against the same shipowner may simultaneously proceed without violating the Limitation Act. The Court held that " 'the prosecution *pari passu* of distinct suits in different courts, or even in the same court by separate claimants, against the shipowner, is, and must necessarily be, utterly repugnant to such proceedings, and subversive of their object and purpose.' " *Id.* at 373, 32 S.Ct. 275 (quoting *Providence & N.Y.S.S. Co. v. Hill Mfg. Co.*, 109 U.S. 578, 594, 3 S.Ct. 379, 27 L.Ed. 1038 (1883)). This holding bears only on suits against *shipowners* and instructs this court not at all on suits against third-parties. Moreover, the Supreme Court

has never again referenced this aspect of the decision and, in certain situations, may be abrogated by *Langnes v. Green*, 282 U.S. 531, 51 S.Ct. 243, 75 L.Ed. 520 (1931) and *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 121 S.Ct. 993, 148 L.Ed.2d 931 (2001).

Finally, *In Matter of Complaint of Paradise Holdings, Inc.*, 795 F.2d 756 (9th Cir.1986), the Ninth Circuit issued a stay pursuant to § 187 of the Limitation Act, enjoining a state court proceeding against the master of a vessel. The court reasoned that because, the shipowner insured the master, the major purpose of the Act—namely "permit[ting] the vessel owner to receive the benefit of his insurance"—would be frustrated. *Id.* at 762 (citations omitted). Thus, the court held that "where it is . . . inconsistent with the purposes of the Act to permit some limitation-action claimants to proceed in state court against [individuals other than the owner] . . . a district court has discretion to stay the state actions or otherwise to shape the limitation proceedings in a manner that promotes the purposes of the Act." *Id.* at 763. This holding, even if it were binding authority on this court, once again does not stand for the proposition that I *must* hear all of the claims brought by and against all of the parties. Rather, it quite clearly states that such a decision lies within my discretion.

Simply put, these cases do not require this court to grant plaintiff's motion and thereby extend the current stay.

**11.** Although plaintiff has several complaints regarding the extent to which its continues to be hampered by the state court litigation, the

granting plaintiff's motion at this—or any other—juncture drastically curtails the state court plaintiffs' rights as preserved by the Saving to Suitors Clause; namely, the right to proceed in a legitimate forum of their choosing and the right to jury trial.[12] Finally, should I decide to exercise my discretion, it would be prudent to do so upon a complete record rather than at this stage of the proceedings. As my evaluation of the merits of this limitation action will likely coincide with the conclusion of discovery, I see no reason to blindly jump the proverbial gun. Thus, despite plaintiff's contentions that this court must adjudicate all of the claims brought by all of the parties, and state court plaintiff's contentions to the contrary, the question of whether this court will hear these other claims may and will remain open until after resolution of the limitation issue.

■ In short, neither the Limitation Act nor the case law interpreting it requires this court to extend its stay of other proceedings against plaintiff to include all other claims and parties. Thus, plaintiff's

arguments present less a case of "dog eat dog," as plaintiff suggests, and more a case of the tail wagging the dog. For these reasons, at the present juncture, the Anti–Injunction Act prohibits this court from staying the continuing state court proceedings against plaintiff's alleged joint tortfeasors.

### Conclusion

In sum, plaintiff has already obtained all to which it is entitled pursuant to the Limitation Act. It presents no binding authority or persuasive reason which would require or convince this court to expand its stay to include all claims by all parties in state court. This court is proceeding to determine all of the discrete issues involved in making a determination as to whether plaintiff is entitled to limitation of liability. All of the claims arising out the collapse of Pier 34 have been filed in either Philadelphia Court of Common Pleas or this court and discovery is being well-managed by the state court. There is no need at this time for this court to deter-

---

court finds none so compelling as to grant plaintiff's motion.

First, plaintiff avers that the state court did not stay all proceedings against it, but merely severed it from all of the other actions pending in state court. As a result, it is forced to continue accepting services and filing answers to those complaints filed in state court. As a preliminary matter, there is no doubt that the state court proceedings against plaintiff have been stayed. *See* Order (Yohn, J., June 29, 2001) (Doc. # 44 & 45). Moreover, even if this were not the case, the Supreme Court has held that the filing of a limitation action prohibits the state court proceedings from moving forward even without the issuance of this court's injunction. *Metropolitan Redwood*, 223 U.S. at 372, 32 S.Ct. 275 ("Nor is the issuance of an injunction necessary to stop proceedings in separate or independent suits upon such claims. . . . The very nature of the proceeding and the monition has the effect of a statutory injunction."). Additionally, if the state court is not honoring that injunction, plaintiff can take steps in that court to

enforce its rights. It should also be noted that the restraining order of June 28, 2001 contained a stipulation, agreed to by plaintiff, that the order would "not effect the taking of discovery by all parties to this and the state court actions arising from the collapse of Pier 34." Stipulation and Consent Order (Yohn, J., June 29, 2001)(Doc. # 46).

Second, plaintiff complains that because the depositions of defendants Asbell and Karetny cannot be held as a result of the pending criminal actions against them, state court discovery is hindered. That problem, however, would not be magically solved by moving the case to federal court. Moreover, at oral argument, the personal injury plaintiffs noted that no party in the state court litigation has there objected to the discovery process.

Thus, none of plaintiffs alleged concerns warrants an extension of the current stay.

**12.** It should be noted that plaintiff never once mentions the Savings to Suitors Clause in its briefs.

mine what discretionary authority it has with reference to other claims, for if I do have the authority to require all the claims to proceed in this court, I do not choose to exercise it at this time. Consequently, plaintiff's motion was denied by appropriate order, issued on June 16, 2003. Order (Yohn, J., June 16, 2003)(Doc. # 207).